**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA**
Benjamin L. Rundall, State Bar No. 031661
Jared G. Keenan, State Bar No. 027068
Christine K. Wee, State Bar No. 028535
3707 N. 7th St., Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org
brundall@acluaz.org
cwee@acluaz.org

**SNELL & WILMER L.L.P.**
Edward J. Hermes (ASB #030529)
Delilah R. Cassidy (ASB #037407)
1 East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: (602)382-6529
Email: ehermes@swlaw.com
         dcassidy@swlaw.com

**DICKINSON WRIGHT PLLC**
Brian J. Hembd, State Bar No. 029817
Cameron C. Stanley, State Bar No. 036605
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
bhembd@dickinsonwright.com
cstanley@dickinson-wright.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Fund for Empowerment, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>City of Phoenix, et al.,<br><br>        Defendants. | No. CV-22-02041-PHX-GMS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION** |

While the Response paints the Defendant City of Phoenix (the "City") as champion of the unsheltered population, the declarations of individuals affected by the City's actions show this depiction to be nothing but an illusion. *See* Def.'s Resp. to Mot. Prelim. Inj. 1–6, Ex. 1–5, ECF No. 17. The Response only reinforces Plaintiffs' request for injunctive relief, confirming new planned sweeps in the Zone and admitting continued use of constitutionally suspect ordinances. Additionally, the City misconstrues Plaintiffs' narrow request for relief, which would not prevent cleanup efforts performed in accordance with the constitutional

requirements expounded in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), and *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012).

At this preliminary stage, Plaintiffs are simply seeking relief from "sweeps," "raids," or "sanitation" used pretextually by the City to destroy Plaintiffs' belongings and cite them criminally under constitutionally suspect ordinances throughout Phoenix—not just in the Zone. The City's bald assertions of constitutional compliance cannot overcome Plaintiffs' credible testimony that the City has acted otherwise in all areas of the city. Because Plaintiffs have made a clear showing under the *Winter v. Nat. Res. Def. Council Inc.*, 555 U.S. 7, 20 (2008), factors, Plaintiffs are entitled to the relief requested in their Motion for Preliminary Injunctive Relief (the "Motion").

### I. The City's Claim of Voluntary Cessation Does Not Invalidate the Need for a Preliminary Injunction.

The Response repeatedly argues that changes in policy and practice invalidate the need for injunctive relief. While Plaintiffs dispute that the City has sufficiently changed its policies and practices to satisfy constitutional requirements, "a defendant's decision to stop a challenged practice generally 'does not deprive a federal court of its power to determine the legality of the practice.'" *Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016) (citation omitted). Indeed, "an action for an injunction does not become moot merely because the conduct complained of was terminated, *if there is a possibility of recurrence*, since otherwise the defendants would be free to return to [their] old ways." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999) (alteration in original) (citation omitted). "[V]oluntary cessation of a challenged practices rarely suffices to moot a case . . . ." *Johnson v. City of Grants Pass*, 50 F.4th 787, 798–99 (9th Cir. 2022).

In *Grants Pass*, unsheltered plaintiffs challenged constitutionality of the city of Grants Pass's camping ordinance which was similar to the ordinance enjoined in *Martin*. *Id.* Grants Pass argued the claims were moot because it changed the ordinance shortly after *Martin* and rarely enforced it. *Id.* The Ninth Circuit, however, found that even where the ordinance was only enforced two times, it created a justiciable issue ripe for review. *Id.*

Because the law was still active and enforced, though rarely, "the City did not meet its 'formidable burden' of showing the challenged activities will not recur." *Id.* (citation omitted).

Like *Grants Pass*, the City affirmatively asserts its right to continue its unconstitutional conduct throughout the Response. Specifically, the City notes its intent to continue criminalizing sleeping via the anti-camping and sleeping ordinances (Resp. 10–11)[1]; to subject unsheltered individuals (such as Plaintiffs) to dangerous conditions by transporting them via a "courtesy ride" to a dangerous area (the Zone) without additional support or oversight (Resp. 8); and, perhaps most importantly, by confirming new sweeps in the Zone (Resp. 9).[2] Setting aside Plaintiffs' additional allegations, the City's statements alone make this controversy justiciable and weigh in favor of affording Plaintiffs the relief they request.

## II. Plaintiffs Have Standing to Challenge the City's Actions.

The City largely discounts the experiences of Plaintiffs and their declarants, even going so far as to challenge Plaintiffs Faith Kearns and Frank Urban's standing. "A plaintiff need not, however, await an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute." *Martin*, 920 F.3d at 609. The injury caused by the sweeps and destruction of property need only be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (citation omitted). Ms. Kearns and Mr. Urban meet this standard because they are at risk of being unhoused again[3] and would be

---

[1] According to the City, these ordinances have been used several times in 2022. Resp.

[2] The City further concedes its clean sweeps might involve "tough calls" and that "in the moment of cleaning [city workers] face difficult decisions" that may even lead to destruction of the very documents Plaintiffs allege have been destroyed in prior sweeps. Resp. 11–12 n.6. Ironically, the City would not have to make such "tough calls" at all if they allowed unsheltered individuals time to gather all their things. *See Pottinger v. City of Miami*, 810 F. Supp. 1551, 1571 (S.D. Fla. 1992) (noting that "homeless individuals often arrange their property in a manner that suggests ownership" which makes it "reasonably distinguishable from truly abandoned property, such as paper refuse or other items scattered").

[3] It is well established that individuals who presently have shelter but are chronically unhoused have standing under the "capable of repetition yet evading review" standard. *See,*

3

subject to the imminent sweeps that occur (and are planned) by the City. If and when they become unhoused, they would also be subject to criminal prosecution under the City's anti-camping and sleeping bans.

### III. The City's Blanket Denial of Responsibility Does Not Defeat Plaintiffs' Clear Showing of Wrongdoing.

The City argues there is "no credible evidence to support Plaintiffs' claims" and deny responsibility for the harm alleged by Plaintiffs. Resp. 12. But the City's denial does not change Plaintiffs' burden at this stage: the party moving for injunctive relief must make a "clear showing" that they have met the burden of persuasion under the *Winter* factors. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Yet, "[i]n ruling on a motion for preliminary injunction, the Court may accept as true well-pleaded allegations [in the complaint] and uncontroverted affidavits." *Castaneda v. Garland*, 562 F. Supp. 3d 545, 562 (C.D. Cal. 2021) (alteration in original) (internal citation marks omitted) (citation omitted). In so doing, "[t]he Court may also rely on otherwise inadmissible evidence, including hearsay." *Id.* This is because "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* Therefore, the moving party "is not required to prove his case in full at a preliminary injunction hearing." *Id.*

Here, although the City may doubt the experiences shared by Plaintiffs and their declarants, it cannot specifically rebut Plaintiffs' claims made in the Complaint and

---

*e.g.*, *Bell v. City of Boise*, 709 F.3d 890, 901 n. 15 (9th Cir. 2013) (noting that defendants were not entitled to summary judgment on the ground that plaintiffs were no longer unsheltered); *Grants Pass*, 50 F.4th at 801 (finding standing to challenge unconstitutional ordinances for plaintiffs that lived in their cars); *Pottinger*, 720 F. Supp. at 959 (noting that the transitory nature of homelessness makes plaintiffs who are not presently homeless susceptible to the condition in the future); *see also Martin*, 920 F.3d at 607–10 (acknowledging that unsheltered persons have varying day to day experiences and thus shelter one day does not guarantee shelter on another).

supporting declarations. Indeed, the City mostly focuses on claims about its enhanced cleanup in the Zone but ignores Plaintiffs' more serious allegation that raids are occurring frequently in all other parts of the City (and have been for nearly two years).[4] Accordingly, Plaintiffs have successfully met their burden of persuasion in requesting relief.

### IV. All Four *Winter* Factors Are Met and Support the Issuance of a Preliminary Injunction.

Even after the City's Response, Plaintiffs have met their burden of persuasion under each *Winter* factor and should be granted injunctive relief. *See Winter*, 555 U.S. at 20.

#### a. Plaintiffs Still Have a High Likelihood of Success on the Merits.

Nothing in the City's Response can change existing law, which clearly establishes that seizing unsheltered persons' property without due process of law and criminalizing the involuntary state of homelessness violates the U.S. Constitution. *See Martin*, 920 F.3d at 617; *Lavan*, 693 F.3d at 1032. The City attempts to sidestep these holdings by citing to plans they say are similar to their own HSC plan in *Murray v. City of Philadelphia*, 481 F. Supp. 3d 461, 471 (E.D. Pa. 2020), and *Shipp v. Schaaf*, 379 F. Supp. 3d 1033 (N.D. Cal. 2019). Second, the City argues their application of ordinances is based on "individualized assessments" of "shelter space available" at the time of citation, which makes their use constitutionally permissible. Resp. 9–10. Both arguments are unpersuasive.

##### i. *Murray* and *Shipp* Are Easily Distinguishable From Plaintiffs' Present Action Against the City.

To support the constitutionality of its new HSC cleaning plan for the Zone, the City relies on ratification of cleaning plans examined in *Murray* and *Shipp*. But the factual underpinnings in these cases reaffirm why the City's plan for cleanups is suspect.

Starting with *Shipp*, the court examined *Lavan* claims against the City of Oakland brought by two *pro se* unsheltered individuals living in an encampment within city limits. *Shipp*, 379 F. Supp. at 1034. Although the court initially issued a temporary restraining

---

[4] Ironically, Defendants concede that "if what Plaintiffs allege the City was doing was actually occurring, the City would agree with much of the Complaint." Resp. 3. But at this stage, Plaintiffs' well-pleaded allegations in the Complaint must be accepted as true. *Castaneda*, 562 F. Supp. 3d at 562.

order, only one plaintiff presented testimony during a subsequent preliminary injunction hearing. *Id.* at 1035. In denying injunctive relief, the court noted the plaintiffs had failed to provide "any specific details" about the type of items destroyed. *Id.* at 1038. The court noted, however, "[i]f the record contained evidence that the City had repeatedly violated its own policies regarding the destruction of unhoused persons' property, it would raise serious questions as to the merits of Plaintiffs' claim." *Id.*[5]

In *Murray*, the City of Philadelphia took steps to disband encampments set up by unhoused protestors on city property during summer of 2020. 481 F. Supp. 3d at 467. According to the plaintiffs, the encampments "constitute[d] protests advocating for fair housing for the homeless." *Id.* Because the camps were part of a broader protest movement, "[c]ity officials and outreach workers [were] not permitted to visit the encampments, and general public access to the encampments ha[d] ceased." *Id.* Moreover, only after the City of Philadelphia gave notice over a month in advance informing residents "their occupancy was unlawful and that they must leave the location and remove their personal property" did plaintiffs sue. *Id.* at 468. Notably missing a *Martin*-style claim because of the protest nature of the encampments, the *Murray* court determined the city's policy of providing more than 72-hour notice to residents and agreeing to store any confiscated property for at least 30 days satisfied any Fourth Amendment concerns. *Id.* at 470–71.

Unlike *Shipp*, Plaintiffs here have identified numerous declarants who can speak to the City's continued raids that result in the destruction of unsheltered individuals' property. These declarants have provided specific details about the type of items that have been destroyed. Unlike *Murray*, Plaintiffs are not engaged in this lawsuit to enshrine a right to set up encampments as a form of protest. Plaintiffs would absolutely prefer to have reliable, consistent, and durable housing where they can be protected from the elements. Last, unlike the city defendants in either *Shipp* or *Murray*, the City has had no plan on how to interact with the homeless community. Indeed, the very plan they wish to implement is one that only applies to the Zone and has never been used previously. As warned by the court in *Shipp*, if

---

[5] Additionally, the City of Oakland's plan provided an initial 72-hour notice. *Id.*

the record contains evidence of repeated constitutional violations, it should raise serious questions as to the merits of Plaintiffs' claim. 379 F. Supp. at 1038. And here, City has had no plan for years, let alone a constitutional one.

### ii. Daily Fluctuations in Shelter Occupancy Do Not Render *Martin* Inapplicable.

The Response bolsters Plaintiffs' likelihood of prevailing on the merits of their Eighth Amendment claim against the City's enforcement of the anti-camping and sleeping bans. The holding in *Martin* makes clear, "so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters], the jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying, and sleeping in public." 920 F.3d at 617 (alteration in original) (internal quotation marks omitted) (citation omitted). And "[a] local government cannot avoid this ruling by issuing civil citations that, later, become criminal offenses." *Grants Pass*, 50 F.4th at 807. Under a plain interpretation of the *Martin* and *Grants Pass* holdings, the City is prohibited from enforcing the anti-camping and sleeping bans while shelter beds remain unavailable to a large portion of the Phoenix unsheltered community.[6]

Here, the City admits, "[t]here are simply not enough shelter beds to accommodate the current number of unsheltered in the City." Resp. 4:4–6. The City's efforts to provide more beds further demonstrates that there "isn't enough shelter space in the jurisdiction." Resp. 4–6, 9. This is the exact trigger for not enforcing criminal prohibitions raised in *Martin*. Nor can the City argue that there is no need for an injunction where it admits that it is in fact enforcing anti-camping and sleeping bans.

Last, the City seems to agree that even of the shelter spaces available, not all of these spaces are practically available to all unsheltered individuals given restrictions to admission such as gender, religion, or life circumstance. Resp. 5; *see also* Pl's. Mot. Prelim. Inj. Ex. 1 ¶ 12, Ex. 2 ¶ 12, ECF No. 2. Therefore, the City's arguments about individualized assessments based on fluctuations does not disturb Plaintiffs' claim that there are not enough

---

[6] Plaintiffs' do not dispute that time, place, and manner restrictions may be available for the City to explore, but the current ordinances are facially deficient.

actually available shelter beds in Phoenix for the number of those who are homeless.

### b. Despite the City's Contention to the Contrary, Plaintiffs Are Likely to Suffer Irreparable Harm.

To reiterate, when a plaintiff claims that their constitutional rights will be violated, irreparable harm is assumed. *Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The City's contentions to the contrary are unavailing because constitutional violations in this case are not remote,[7] and Plaintiffs' harm cannot be resolved with economic damages.

### i. The City's Sweeps and Continued Use of Ordinances Is Likely to Cause Irreparable and Imminent Harm.

Instead of directly challenging that constitutional violations presumably result in irreparable harm, the City simply offers "that courts must make a case-by-case determination of whether a plaintiff 'would be entitled to such a presumption.'" Resp. 13:5–9. But the City makes no real argument that the presumption is inapplicable here, only offering an "illustration" where "the Eleventh Circuit's refus[ed] 'to presume irreparable injury from allegations of equal protection violations when it found the primary damage that plaintiff asserted to be 'chiefly, if not completely, economic.'" *Id.* It then applies this illustration to Plaintiffs' destruction of property claims, but not the unconstitutional enforcement claims. Resp. 13:12–13. So, it has not explained why there should be an exception to the rule that constitutional violations are presumed to result in irreparable harm as to the unconstitutional enforcement of the ordinances. Mot. Prelim. Inj. 11, 15–16.

Yet, even had the City tried to claim that the presumption of irreparable harm is inapplicable to the City's unconstitutional enforcement of the ordinances, they would be incorrect. As discussed in the Motion, *Melendres* is on point as to unconstitutional enforcement. In *Melendres*, the Ninth Circuit upheld the finding of irreparable injury where

---

[7] Yet, "when a plaintiff demonstrates a strong likelihood of prevailing on the merits, a preliminary injunction may be entered based only on a "possibility" of irreparable harm." *Winter*, 555 U.S. at 21. Therefore, should the Court find that the possibility of irreparable harm does not rise to the level of likely to occur, a preliminary injunction is still appropriate because of the strong likelihood that Plaintiffs will prevail on the merits.

the plaintiffs demonstrated the defendant Sheriff could invoke a statute to ratify unconstitutional profiling of Hispanic drivers during traffic stops. 695 F.3d at 1002. The court asserted that "it was reasonable . . . to conclude that the Plaintiffs faced a real possibility that they would again be stopped or detained and subjected to unlawful detention on the basis of their unlawful presence alone." *Id.*

The same "real possibility" of constitutional injury in *Melendres* also exists here where the Phoenix ordinances allow Defendants to continue to criminalize the status of the unsheltered community. Defendants' actions in admittedly enforcing the anti-camping and sleeping ban against the unsheltered community further elevated the risk of constitutional injury. Permitting the City to employ the anti-camping and sleeping bans against the unsheltered population has and will continue to result in irreparable injury to Plaintiffs in the form of a violation of their constitutional rights. Defendants have not shown otherwise. Thus, this Court should enjoin the practice.[8]

### ii. The Harm Is Not Solely Economic in Nature.

The City errs in classifying the harm here as economic. As noted by other courts, "the loss of items such as clothes and medicine threatens the already precarious existence of homeless individuals by posing health and safety hazards; additionally, the prospect of such losses may discourage them from leaving the parks and other areas to seek work, food or medical attention." *Pottinger*, 810 F. Supp. at 1573. The taking of property in this context implicates much more than the cost of replacement—it goes to unsheltered individuals' very survival. Even to the extent that some of the harm is economic, "[e]conomic hardship can constitute irreparable harm where . . . it compromises a plaintiff's ability to meet basic needs." *Volis v. City of Los Angeles Hous. Auth.*, No. CV1301397MMMSPX, 2013 WL

---

[8] Additionally, Plaintiffs' claims are not based on a one-time event, but rather years of unconstitutional conduct including ongoing raids in other parts of Phoenix. Indeed, Plaintiffs have argued the City uses clean sweeps as a pretext to take property and criminally cite unsheltered individuals. Mot. Prelim. Inj. While the City has an interest in keeping Phoenix clean, the City must pursue that interest in a constitutional manner, something they have never done. As a result, there is a real risk of irreparable and imminent harm should the City be allowed to carry out sweeps without a preliminary injunction in place to ensure constitutional compliance.

12214417, at *3 (C.D. Cal. May 6, 2013). Indeed, back payment "cannot erase either the experience or the entire effect of several months without food, shelter or other necessities." *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989).

Here, the City's seizure of IDs, legal documents, medications, and survival items makes unsheltered people's daily experience even more inherently difficult, exacerbates inability to secure shelter, and thus undermines the City's purported goal in conducting its sweeps. Injunctive relief is necessary because compensation does not suffice when food, medication, makeshift shelter, and other necessities of daily life are taken from those who are unsheltered. Accordingly, the harm inflicted by the City is not solely an economic harm, cannot be redressed easily with compensation, and is irreparable.

### c. The Balance of Hardships Weighs in Favor of Plaintiffs.

While the City has an "interest in maintaining clean and orderly streets[,]" that interest cannot justify, and does not outweigh, the constitutional harm at issue here. Specifically, in the context of unsheltered individuals' personal belongings, "the seriousness of the loss of such property cannot be overemphasized." *Pottinger*, 810 F. Supp. at 1559. Accordingly, "the City's interest in having clean [streets] is outweighed by the more immediate interest of the plaintiffs in not having their personal belongings destroyed." *Id.* at 1573; *see also Winter*, 555 U.S. at 24 (requiring balancing and contrasting of interests, rather than simply identifying each interest).

As for the ordinances at issue, simply claiming that the City should have the power to enforce the anti-camping and sleeping bans does not tip this factor in favor of the city. Resp. 13–14. Unconstitutionally enforcing ordinances is not a hardship. And while the City again mentions there are public health concerns, it does not show or argue how enforcing the ordinances at issue would resolve those alleged public health concerns.

Plaintiffs do not contest the City's authority to make decisions about sanitation (particularly in the Zone), but sanitation does not need to, nor can it, result in the unconstitutional seizure and destruction of Plaintiffs' property. A slight pause in the City's cleaning efforts until such efforts can be thoroughly reviewed for constitutional compliance

is preferable to the continued violation of unsheltered persons rights.[9] Plaintiffs, and other members of the unsheltered population, have suffered unconstitutional deprivations under the ordinances and because of the raids. As a result of the Defendants' practices, Plaintiffs have criminal records for engaging in simple human activities, like sleeping,[10] in public spaces when they had nowhere else to go. Plaintiffs have shown the balance of hardships tips to them.

Last, the City continually claims it will not violate the constitutional rights of unsheltered persons when implementing their new cleaning policy in the Zone; therefore, the City would not be harmed by an injunction that prevented them from destroying property or enforcing the ordinances. The injunction should be granted.

### d. **Public Policy Weighs in Favor of Granting the Preliminary Injunction.**

Defendants' general argument that enforcement of criminal law is constantly shifting and needs individualized determinations is incorrect here where the Constitution's requirements have been specifically defined by the Ninth Circuit in *Martin*. Resp. 17:12–25. Such judicial clarification is both necessary and routine because "[i]t is clear that it would not be equitable or in the public'ss interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (citation omitted). For example, there is an overwhelming amount of court issued authority on the Fourth Amendment's boundaries. The government must follow that authority and cannot simply claim each search and seizure is fact specific so as to prevent constitutional bright line requirements handed down by the courts. On the contrary, the public interest and the balance of the equities favor "prevent[ing] the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted).

---

[9] While the City avows their current plan for the Zone will not violate constitutional rights, such statements cannot be relied upon as the City has a well-known practice of violating unsheltered individuals' rights and should not be unilaterally making such decisions without oversight.

[10] By issuing citations for sleep, Defendants have deprived Plaintiffs of their universal human right to sleep. *Martin*, 920 F.3d at 617 n.8.

Notably, the City makes no attempt to argue that an injunction under either the Fourth or Fourteenth Amendment claim is not in the public interest. Indeed, no support would be available for such an argument as there is no decision in which a court announced it is unequipped to hold the government accountable for unconstitutionally taking and destroying the property of anyone, let alone those who are unsheltered and rely on their few personal belongings to get by. Instead, the City focuses the public policy factor on the authority of the City to set standards of criminal responsibility in the context of due process requirements in criminal cases. Plaintiffs do not challenge this statement of law; however, due process in criminal cases is not at issue here. Unconstitutional deprivations of property and violations of the Eighth Amendment are. The public interest weighs in favor of Plaintiffs because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted)

## V.  Conclusion

Based on the foregoing, Plaintiffs respectfully request that the Court grant their motion for preliminary injunction to restrain Defendants from enforcing Phoenix City Code Section 23-30 (A), Phoenix City Code Section 23-48.01 and conducting any raids or sweeps of the unsheltered community involving the unconstitutional destruction of personal belongings.

Respectfully submitted this 12th day of December, 2022.

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF ARIZONA
By:  */s/Benjamin L. Rundall*
     Benjamin L. Rundall
     Jared G. Keenan
     Christine K. Wee

SNELL & WILMER L.L.P.
By:  */s/ Edward J. Hermes*
     Edward J. Hermes
     Delilah Cassidy

DICKINSON WRIGHT, LLP
By:  */s/ Brian J. Hembd*
     Brian J. Hembd
     Cameron C. Stanley

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2022, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Benjamin L. Rundall*
Benjamin L. Rundall