**TULLY BAILEY LLP**
11811 N Tatum Blvd, Unit 3031
Phoenix, AZ 85028
Telephone: (602) 805-8960
Stephen W. Tully (AZ Bar No. 014076)
stully@tullybailey.com
Michael Bailey (AZ Bar No. 013747)
mbailey@tullybailey.com
Ilan Wurman (AZ Bar No. 034974)
iwurman@tullybailey.com

*Attorneys for Intervenor Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Fund for Empowerment, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> City of Phoenix, *et al.*, <br><br> Defendants. <br><br> Freddy Brown, et al., <br><br> Intervenor Defendants | Case No.: CV-22-02041-PHX-GMS <br><br> **Intervenors' Motion to Dismiss under 12(b)(6) and 12(b)(1) and in the Alternative to Abstain** |

   Intervenors move the Court pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) for an order dismissing Plaintiffs' First Amended Complaint (Doc. 45) as Plaintiffs fail to state a claim for injury for which the law provides them any relief and Plaintiffs lack standing to maintain their claims. In the alternative, if they have stated a claim, this Court should abstain while parallel state-court proceedings play out because any claim they may state and any relief granted for such a claim may interfere with the ongoing state court matter.

-1-

## I. THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

A complaint should be dismissed if it fails to make factual allegations sufficient to state a cause of action, meaning that the Plaintiffs "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (citation omitted). Here, the Plaintiffs fail to satisfy this requirement as to either their Eighth Amendment or Fourth Amendment claims. As a result, all the counts fail.

### A. PLAINTIFFS FAIL TO PLEAD FACTS SUFFICIENT FOR THEIR EIGHTH AMENDMENT CLAIM

Central to the Plaintiffs' allegations are their assertions that *Martin v. City of Boise*, 920 F.3d 584, 617 (9th Cir. 2019), forbids the City from "prohibiting sleeping outside," Doc. 45 ¶ 161, and that by enforcing various longstanding laws against camping or sleeping on public streets, the City is "criminalizing [people's] unsheltered status." *Id.* ¶ 10. But that is not what *Martin* said, and the Plaintiffs have failed to allege facts sufficient to give rise to a complaint under what *Martin* did say.

*Martin* said that it violates the Eighth Amendment to punish a person for her status—meaning for "acts or conditions [that] . . . are universal and unavoidable consequences of being human." 920 F.3d at 617 (citation and quotation marks omitted). The Ninth Circuit was quite clear that its holding was "a narrow one," limited specifically to punishing people for "*involuntarily* sitting, lying, and sleeping in public." *Id.* (emphasis added). But the Amended Complaint fails to allege that the Plaintiffs have been penalized for any involuntary activity. Indeed, the word "involuntary" does not even appear in the Amended Complaint.

*Martin* was premised on the idea that the homeless people at issue "had [no] choice in the matter." *Id.* But nowhere in the Amended Complaint do the Plaintiffs allege that that they have no choice with respect to residing on public streets. They do not allege that they

have any permanent disabilities, are mentally or physically incapacitated, or are otherwise incapable of making choices. In fact, the Amended Complaint strongly suggests otherwise. It alleges that Plaintiffs Kearns and Urban have or had credit cards, state identification cards, income from Social Security, photographs, see Doc. 45 ¶¶ 80, 106, 47, as well as stores of food, water, and clothing, *id.* ¶ 93; it also implies that they are capable of obtaining and maintaining employment, *id.* ¶ 11, and yet have resided illegally on public property for many years. *See id.* at ¶ 20.

Nor does the Complaint allege any facts to suggest that these Plaintiffs have sought out shelter beds but found none available. Nor does it allege that they have no family with whom they can stay. Critically, the Complaint does not allege any facts to suggest that when the City has enforced camping bans, it has failed to offer services and shelter to those who would be relocated.

Unfortunate as their circumstances may be, Plaintiffs are simply not in the position addressed by *Martin* and other "status crime" cases. Those cases are concerned with situations in which persons are being punished for "involuntary" actions that are "inseparable from status," meaning actions that "human beings are biologically compelled" to do. *Martin*, 920 F.3d at 617. **The Amended Complaint contains absolutely no allegations that the Plaintiffs are biologically compelled to reside illegally on public streets or public property, or that they are punished for something that is inseparable from their status.**

The Amended Complaint characterizes the City's (inadequate) efforts to enforce laws against vagrancy, camping, loitering, and pollution as "criminaliz[ing]" a "population" based on their "status," Doc. 45 ¶ 9, but what these laws actually do is forbid actions. Barring public rights of way is not a status, but an act—which is why *Martin* said that cities can prohibit camping under certain conditions and penalize those who engage in it. 920 F.3d at 617 n.8. Urinating and defecating on public property, in gutters, or on sidewalks, also are not generally, and when done repeatedly are definitely not, an "unavoidable consequence[] of being human," *id.* (citation omitted); they are illegal

actions which the City has authority (indeed, a legal duty) to punish. *See, e.g.,* A.R.S. §§ 49-201, 49-263.

*Johnson v. City of Grants Pass*, 50 F.4th 787, 792 n.2 (9th Cir. 2022), says that a person is "involuntarily homeless" if that person "do[es] not 'have access'" to shelter. As noted, there are no allegations suggesting that if and when the City enforces camping bans, it does not offer alternative shelter space.

Even if the City offered no such space, a person who has the capacity for employment which would afford shelter, but who chooses not to obtain or maintain that employment, or who has the capacity to pay for shelter, but chooses not to do so, is not *involuntarily* homeless. Obviously, Intervenors are unaware of whether Plaintiffs or their clients are capable of obtaining the funds to pay for shelter or not—because the Amended Complaint lacks any allegations on that score, except to say that one named Plaintiff has both income from Social Security and a credit card. Doc. 45 ¶ 80. Because the Amended Complaint fails to allege that any of the Plaintiffs are involuntarily homeless, it simply fails to state a cause of action under existing precedent. That claim should be dismissed under Rule 12(b)(6).

This claim should also be dismissed under Rule 12(b)(1) for lack of standing. "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983). And "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citations omitted).

Importantly, "in assessing standing" under Rule 12(b)(1), "the court may consider 'the complaint and any other particularized allegations of fact in affidavits or in

amendments to the complaint.'" *Id.* (quoting *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.,* 256 F.3d 879, 882 (9th Cir. 2001)). "While review for failure to state a claim under 12(b)(6) is generally confined to the contents of the complaint, in determining constitutional standing, 'it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.'" *Id.* (citations omitted). And if the court can require affidavits to establish standing, it can consider affidavits that have already been filed.

Here, affidavits filed the day after the complaint confirm there is no standing. There are only four plaintiffs in this action: Faith Kearns, Frank Urban, Ronnie Massingille, and the organization Fund for Empowerment. Plaintiff Kearns has been in transitional housing since 2020, Doc. 2-1, Ex. 1 at ¶ 22, as has Plaintiff Urban, *id.* Ex. 2 at ¶ 23. They are not, in other words, unsheltered at all. As for the Fund for Empowerment, there is no indication that any of its individual members—who are unknown and unidentified—are involuntarily unsheltered and thus have standing. This defeats associational standing. That leaves only Plaintiff Massingille, with respect to whom the Amended Complaint merely alleges that he is "currently unsheltered." Doc. 45 ¶ 100. There are no allegations whatsoever about how long he has been unsheltered, or why, or what resources might be available to him.

Plaintiffs' Eighth Amendment claim (Count Three) should therefore be dismissed under both 12(b)(6) and 12(b)(1).

**B.    PLAINTIFFS DO NOT REQUEST ANY RELIEF THAT THIS COURT CAN GRANT ON THE FOURTH AMENDMENT CLAIM**

The Plaintiffs' Fourth Amendment claim should also be dismissed under Rule 12(b)(1) as Plaintiffs are not entitled to enjoin the City of Phoenix to follow the law in the future. The only relief Plaintiffs seek is declaratory and injunctive relief. Yet, as to any potential future violation, Plaintiffs Kearns and Urban currently live in transitional housing, and there is no allegation suggesting that they are at risk of a Fourth Amendment violation in their transitional housing. As for Plaintiff Massingille, there is no allegation

about where he is currently residing as an unsheltered individual, or whether a Fourth Amendment violation is likely to occur in that place. In other words, Plaintiffs are merely asking this Court for an unconstitutional advisory opinion.

Simply put, injunctive relief on a Fourth Amendment claim is almost always inappropriate; the remedy for a Fourth Amendment violation is either suppression of evidence, or a suit for damages. *Lyons*, 461 U.S. at 113 (rejecting injunctive relief because "[i]f Lyons has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983"). The Plaintiffs have *filed* a suit for damages in the form of a §1983 suit and allege that at some points in the past the City destroyed their property. *See* Doc. 45 ¶¶ 141-42, but they do not *seek* damages. They seek only injunctive relief. Indeed, it appears that the Plaintiffs are not seeking monetary damages for the destruction of their property because such claims would be time barred.[1]

But if there is no imminent risk to *them personally* that their property might be seized, then a claim for injunctive relief is not ripe. *Lyons*, 461 U.S. at 101–02 (1983) (holding, in Fourth Amendment context, that "[a]bstract injury is not enough" and the "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical") (cleaned up). In *Lyons*, the Supreme Court stated that "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Id.* at 103. As

---

[1] The statute of limitations on a § 1983 claim in Arizona is two years. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) ("Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state. In Arizona, the courts apply a two-year statute of limitations to § 1983 claims.") (citing *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985)).  Plaintiffs Kearns and Urban both filed declarations the day after the complaint was filed stating that the "last sweep I can recall" happened "a few days before Thanksgiving" in "2020." Doc. 2-1, Ex. 1 at ¶ 19, Ex. 2 at ¶ 18. There is no indication of whether Kearns' property was seized or destroyed on *that* occurrence. But even if it was—Urban recalls his property being destroyed—Thanksgiving that year was on November 26, 2020. Plaintiffs filed their Complaint on November 29, 2020, after the limitations period.

noted, Plaintiffs Kearns and Urban are not unsheltered and this count must be dismissed as to them under 12(b)(1).

As for Plaintiff Massingille, the First Amended Complaint simply does not allege sufficient facts to determine whether he is likely to be in a position where his property might be seized. It does not allege when he last had his property seized or destroyed, how long ago that was, where he currently resides, or why he thinks he is likely to be subject to such seizures again. Count One of the First Amended Complaint should therefore be dismissed as to Plaintiff Massingille as well under Rule 12(b)(1). A single plaintiff cannot undertake what is effectively a class-action lawsuit with no allegations whatsoever to suggest he is likely to experience the allegedly unconstitutional conduct.

Further, because there is no subject-matter jurisdiction over Count One, there is no subject-matter jurisdiction over Count Two (Fourteenth Amendment), which is identical to Count One on the relevant factual allegations. And, because the First Amended Complaint does not state a claim on either the Fourth or Eighth Amendment—and therefore does not state a claim under 42 U.S.C. § 1983—Count Four alleging municipal liability under § 1983 must be dismissed as well.

C. **PLAINTIFFS DO NOT HAVE STANDING FOR COUNT FIVE**

Count Five alleges that the Zone in Phoenix is a "state created danger." However, as noted, there are no allegations that any of Plaintiffs are currently residing in the Zone. Indeed, in their declarations filed a day after their complaint, two of the three individual Plaintiffs stated they live in transitional housing. As for Plaintiff Massingille, the First Amended Complaint merely alleges that he was unsheltered and that he "*commonly* sleeps outside in various parts of the City, *including* the Zone." Doc. 45 ¶ 101. Because there is no allegation that he currently resides in the Zone, he has no standing, either. Thus, this claim should be dismissed as to them under 12(b)(1).

Finally, even *if* Massingille is currently residing in the Zone, he is not legally *allowed* to camp there. *See* Phoenix Municipal Code § 23-6 (unlawful to lie or sleep in

-7-

public in drunken or disorderly condition); *id.* § 23-8 (unlawful to obstruct sidewalks); *id.* § 23-9 (unlawful to obstruct public streets, alleys, sidewalks, or parks by doing anything injurious to health, or which obstructs or interferes with free use of property); *id.* § 48.01 (unlawful to use public easements and rights of way for lying, sleeping or otherwise remaining in a sitting position thereon). And, as noted, there is no allegation that he is *involuntarily* in the Zone, and cannot relocate elsewhere. Thus, the claim should be dismissed as to him (and the other Plaintiffs) under both 12(b)(1) and 12(b)(6).

## II. THIS COURT SHOULD ABSTAIN

Intervenors recognize that the Court has expressed its skepticism of arguments for abstention. Intervenors respect the Court's skepticism but believe abstention is appropriate here. Three abstention doctrines are applicable: *Colorado River* abstention, *Pullman* abstention, and *Younger* abstention.

### A. *COLORADO RIVER*

Abstention is appropriate here under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), in light of the ongoing litigation in *Brown v. City of Phoenix,* 1 CA-CV 23-0273 (appeal filed May 22, 2023).

The test for abstention under *Colorado River* is a flexible, non-mechanical set of considerations designed to allow state courts to resolve both state and federal constitutional questions and alleviate the burden on federal courts. *See Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841–42 (9th Cir. 2017). Federal courts weigh eight factors in deciding whether to abstain in the face of ongoing state-court proceedings: (1) which court first assumed jurisdiction "over any property at stake," (2) the inconvenience of the federal forum, (3) the desire to avoid piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether federal law or state law provides the rule of decision on the merits, (6) whether the state court proceedings can adequately protect the rights of the federal litigants, (7) the desire to avoid forum shopping, and (8) whether the state proceedings will resolve the issues in the parallel federal case. *Id.*

Here, the balance of factors weighs in favor of abstention. As to factors one and four (which are identical under these facts), the state court assumed jurisdiction first—four months before this case was filed.[2] Indeed, the state court held full briefing and argument, and a day-long evidentiary hearing with testimony from multiple witnesses in October 2022, a month before the Complaint here was filed. As to factors two and three, having two simultaneous cases concerning the same or substantially overlapping issues and facts is both inconvenient and encourages piecemeal litigation. Having three separate parties litigating the effect of *Martin v. City of Boise* in two separate forums is both inconvenient and likely to lead to state/federal conflict, if it hasn't already.

With respect to the fifth factor—whether state or federal law provides the rule of decision—public nuisance is the basis for the state-court plaintiffs' requested relief, and any federal constitutional issues are, at best, defenses to that underlying state-law cause of action. As such, the City of Phoenix would have been unable to remove the *Brown* case to this Court without violating the well-pleaded complaint rule. Although that rule does not bar third parties from filing in federal court, it does suggest that the *principal* rule of decision involved here derives from state law.

As for factors six and seven—whether the interests of the federal plaintiffs can be adequately protected in state court, and the desire to avoid forum shopping—there is no doubt that the Maricopa County Superior Court and the Arizona Court of Appeals are adequate to protect the rights of all parties, and the Plaintiffs in this case face no obstacle to appearing in that case; they are, as they allege, based in Phoenix. To have simultaneous proceedings encourages forum-shopping. Forum shopping is defined as seeking to "obtain advantage by shifting jurisdiction from its natural locale to another." *Singh v. Wolf*, No. CV200062PHXMTLJFM, 2020 WL 4455468, at *10 (D. Ariz. Mar. 31, 2020).

Given that the Plaintiffs here were fully aware of the ongoing litigation in state court and filed this case in federal court rather than seeking leave to participate in the ongoing state court litigation—and without explaining to this Court why it would take this unusual

---

[2] Maricopa County Superior Court No. CV2022-010439.

step—invokes this concern. Not only that, but state courts are fully competent to adjudicate federal constitutional issues raised in defense. *Tafflin v. Levitt*, 493 U.S. 455, 458–459 (1990) ("[S]tate courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States."). There is no reason to think this Court would better protect constitutional rights than the state court in the *Brown* litigation.

As to the final factor, there is no reason to doubt that resolution of the state case can fully address the issues concerned here. Intervenors, who are the plaintiffs in the ongoing state case, have never argued in favor of unconstitutional actions such as criminalizing involuntary activities or confiscating property without due process. Rather, they contend that the City must take steps to abate the nuisance that it is maintaining in the Zone—steps that it can take without contradicting the *Martin* case, which expressly stated that it was not suggesting "that a jurisdiction with insufficient shelter can never criminalize the act of sleeping outside." 920 F.3d at 617. The Superior Court agreed, issuing an injunction in March that mandates the abatement of the public nuisance in the Zone while expressly holding that *Martin* does not forbid that relief. In short, the legal question at issue here is a matter entirely within the competency of the *Brown* court.

It is worth mentioning that those eight *Colorado River* factors are not exhaustive. The point of "*Colorado River* and its progeny" is to determine whether "'exceptional circumstances' exist warranting federal abstention from concurrent federal and state proceedings." *Seneca*, 862 F.3d at 841 (quoting *Colorado River*, 424 U.S. at 813). Here, the circumstances are undeniably exceptional. Consider what were to happen if this Court were to *refuse* to abstain. The City could be faced with two conflicting injunctions—one from state court, the other from this Court. Yet, because the parties to the two proceedings are different, neither res judicata nor collateral estoppel will apply, and so the ordinary "race to judgment" rule does not work. Thus, if the City complied with this Court's order but not the state court's order, it would face contempt of court in state court. The City could raise this Court's injunction as a defense, but that injunction has no binding force on the

state court. Thus, this case could not be resolved until the Supreme Court of the United States granted review of the contempt proceeding from the Arizona Supreme Court. If the whole point of *Colorado River* abstention is to avoid exceptional and absurd circumstances, abstention should apply here.

Conflicts between federal and state courts are regrettable, of course, and a federal court has power to enjoin a state court proceeding in order to preserve its jurisdiction—but only where the federal court acquired jurisdiction first. Here, the state court acquired jurisdiction first and, indeed, took testimony and evidence, issued a preliminary injunction, scheduled a trial on the merits, and has pending before it summary judgment briefing. "[T]hat the court first acquiring jurisdiction shall proceed without interference from a court of the other jurisdiction is a rule of right and of law based upon necessity." *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 135 (1941). Here, that court was and is the Maricopa County Superior Court.

### B. *PULLMAN*

Even if this Court were to conclude that abstention and dismissal were not mandated under *Colorado River*, this Court should nevertheless abstain and stay this case under the permissive abstention doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention applies where a case involves "a substantial constitutional issue" that "touches a sensitive area of social policy" and where "constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy," the "federal courts ought not to enter unless no alternative to its adjudication is open." *Id.* at 498. This rule is based on the policy of avoiding potential conflict with state law and policy, and the federal courts' obligation to "restrain their authority [out] of 'scrupulous regard for the rightful independence of the state governments.'" *Id.* at 501 (citations omitted).

As a later decision summarized the doctrine, "when the state court's [resolution of a claim] … may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision

unnecessarily." *City of Meridian v. S. Bell Tel. & Tel. Co.*, 358 U.S. 639, 641 (1959); *see also Colorado River*, 424 U.S. at 814 ("Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" (citation omitted)). Simply put, the rule is: except in rare circumstances not present here, state courts come first, federal courts second.

That rule is applicable here. To repeat, the state case, *Brown v. Phoenix*, No. CV2022-010439 (Maricopa County Superior Court), was filed in August 2022, four months before this case was filed. The Plaintiffs here are familiar with it because they cited it repeatedly in their Complaint here. *See* Doc. 45 ¶¶ 51, 122, 125. In fact, the Plaintiffs even asserted (falsely, but in the guise of a factual allegation) that the plaintiffs in the *Brown* case (Intervenors here) are seeking "[r]elief which would violate the constitutional rights" of the homeless population. *Id.* ¶124. That precise issue would be mooted if the state court were to enter an order consistent with the relief Intervenors seek in that case. That order would demonstrate—as the superior court's preliminary injunction order does demonstrate—that it is possible for the City of Phoenix both to abate the nuisance and to comply with the federal Constitution.

*If* the state court ultimately interpreted state law to require the enforcement of camping bans even if there is nowhere else for the unsheltered to go, that might create a potential conflict with federal law, and a parallel suit might be justified. The trial court has not so held, and the chance of that is remote to non-existent. But *if* the state court interprets state law to require the abatement of the public nuisance but allows the City to do so without violating the rule in *Martin*—as the superior court in fact held in the injunction it has already issued—then the federal constitutional questions are entirely avoided. That is just the situation the *Pullman* doctrine was designed to address.

The *Pullman* doctrine also provides that abstention is "appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Pullman*,

312 U.S. at 498 (citing numerous authorities). That is also the circumstance here. The state-court plaintiffs have presented difficult questions of state public nuisance law that bear on a policy problem—homelessness—of substantial public import. Those issues transcend the question at issue in *Martin*. And they transcend the question of Fourth Amendment rights during "clean sweeps." In other words, the Plaintiffs here are specifically seeking to have a federal court address a constitutional question in the midst of state court litigation on questions of state law involving a state policy problem of substantial public import, thus jumping the gun on federal constitutional questions in direct contradiction to the policies underlying the *Pullman* doctrine.

### C. *YOUNGER*

Finally, *Younger* abstention applies when parallel federal proceedings would *interfere with* ongoing state-court proceedings. While the court has to date not ordered the full relief sought by the Plaintiffs, and the Plaintiffs at times appear to seek to limit their demands to *Martin*, the Fund for Empowerment also asks the Court for broader relief that could enjoin *precisely the relief that a state court has ordered*. *See* Doc. 45 ¶124 & 24:13-25:4. The Plaintiffs are at least attempting to interfere with ongoing state-court proceedings.

The Ninth Circuit has made clear that there are four factors of this abstention analysis which, if met, *mandate* abstention:

> [1] If a state-initiated proceeding is ongoing, and [2] if it implicates important state interests, and [3] if the federal litigant is not barred from litigating federal constitutional issues in that proceeding, then a federal court action that [4] would enjoin the proceeding, or have the practical effect of doing so, would interfere in a way that *Younger* disapproves.

*AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) (quoting *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004); discussing *Younger v. Harris*, 401 U.S. 37 (1971); alterations omitted).

This lawsuit was filed four months after the state-court proceedings in *Brown v. Phoenix*, No. CV2022-010439 (Maricopa County Superior Court), was filed; that litigation

remains ongoing. The Fund for Empowerment could have sought to intervene in the state court proceedings if it had desired to do so. Indeed, the City of Phoenix has raised similar issues to those made by Plaintiffs here in the City's defense to the state court proceeding.

As for the important state interest, the cause of action in the *Brown* litigation is public nuisance, and the issues involved include homelessness and providing humanitarian relief to the unsheltered population. There are few issues more important to a state and municipality, involving welfare, police and fire services, fundamental local and state policy, and the enforcement of a whole series of laws and ordinances against public nuisance and the preservation of public order. *See, e.g.*, Ariz. Rev. Stat. §§ 36-601(1), (4), (5), (13) (defining public nuisances, all of which are violated by the homeless encampment at issue in the *Brown* litigation); *id.* at § 49-201 (defining illegal environmental discharge, also violated by the homeless encampment at issue in the *Brown* litigation); *id.* at §§ 13-2917(A)(1), (A)(2) (further defining public nuisances); Phoenix Municipal Code §§ 23-3, 6, 7, 8, 9, 28, 48, 48.01, 52(A)(3), 53, 84, 85.01 (various ordinances against public order offenses that are also routinely violated as a result of the encampment). The relief the Plaintiffs seek in this federal lawsuit could have the effect of preventing the City of Phoenix from enforcing *all of the above laws and ordinances*. It is difficult to imagine a case with a *more* substantial or important state interest.

Moreover, the United States Supreme Court has explained that *public nuisance proceedings* are similar in importance to state criminal proceedings for purposes of *Younger* abstention. In *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), the Court held that *Younger* "bars a federal district court from intervening in a state civil proceeding such as this"—in that case, "public nuisance"—"when the proceeding is based on a state statute believed by the district court to be unconstitutional." *Id.* at 594–96. Admittedly, in *Huffman* it was the state officers themselves who brought a public nuisance action, but that difference is immaterial. In the state-court litigation here, Intervenors sought to force the City to enforce its laws against public nuisance and to abate a public nuisance, the state court agreed with the Intervenors, and the City began to enforce those laws pursuant to a

state-court injunction. The City is therefore engaged in a variety of "enforcement" actions to abate the public nuisance, just as in *Huffman*.

In *Sprint Commc'ns, Inc. v. Jacobs*, the Supreme Court clarified that "enforcement actions" to which *Younger* applies "are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act," and that "a state actor is routinely a party to the state proceeding and often initiates the action." 571 U.S. 69, 79 (2013). This is exactly what happened here, even though in this case the City did not "initiate" the state-court action, and the federal plaintiffs are not defendants in the state court action. The Supreme Court, however, indicated that although the state party "often" initiated the action, it is not *necessary* that it do so; and the "enforcement action" does not necessarily need to be identical to the underlying state-court proceeding. Here, the federal plaintiffs claim they are subject to potential sanction for violating public nuisance laws, and a state court has ordered the City to abate the nuisance and noted that the City can do so by enforcing those laws against persons living in the Zone. In *substance*, then, this case is the kind of case to which the Court expects *Younger* abstention to apply.

As for whether the federal proceedings here would interfere with the state court proceedings so as to practically enjoin them, there can be no question of that now. Plaintiffs' latest motions have made it clear that they do in fact seek a federal-court order that would directly interfere with and enjoin the ongoing state-court proceedings. That is because the state court has *ordered* the City of Phoenix to engage in certain clean-up actions to abate a specific public nuisance, and the Plaintiffs have now sought in *this* case an order *prohibiting* the City of Phoenix from doing just that. That, for all intents and purposes, would freeze the state court litigation. If it cannot compel the relief it has already ordered because of an injunction from this Court, then there will be nothing left for the state court to do. As the Ninth Circuit has held, "a determination" under 42 U.S.C. § 1983 "that the federal plaintiff's constitutional rights were violated would be just as intrusive as a declaratory judgment," and would have the effect of interfering with the ongoing state court proceedings. *Gilbertson v. Albright*, 381 F.3d 965, 980 (9th Cir. 2004). This Court

must abstain under *Younger v. Harris*.

### III. CONCLUSION

This is not a class action lawsuit. The Plaintiffs have not stated claims of injury or of imminent injury such as would warrant the relief they seek. This Court should dissolve the injunction and dismiss the Amended Complaint for failure to allege facts necessary to state a claim. Because neither the Fourth Amendment nor the Eighth Amendment claims are valid, Counts One through Five must all be dismissed. In the alternative, this Court should abstain on the basis of one of several abstention doctrines described above.

RESPECTFULLY SUBMITTED this 7th day of June 2023.

**TULLY BAILEY LLP**

/s/ *Stephen W. Tully*

Stephen W. Tully
Michael Bailey
Ilan Wurman
*Attorneys for Intervenors*

# CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

American Civil Liberties Union
Foundation of Arizona
Jared G. Keenan
Christine K. Wee
brundall@acluaz.org
jkeenan@acluaz.org
cwee@acluaz.org

Snell & Wilmer LLP
Edward J. Hermes
Delilah R. Cassidy
dcassidy@swlaw.com
ehermes@swlaw.com

Pierce Coleman PLLC
Aaron D. Arnson
Trish Stuhan
Justin Pierce
aaron@piercecoleman.com
trish@piercecoleman.com
justin@piercecoleman.com

Benjamin L. Rundall
Zwillinger Wulkan PLC
2020 North Central Avenue, Suite 675
Phoenix, Arizona 85004
ben.rundall@zwfirm.com

By: /s/ *Stephen W. Tully*