Benjamin L. Rundall (No. 031661)
Joshua M. Spears (No. 034159)
**ZWILLINGER WULKAN PLC**
2020 North Central Avenue, Suite 675
Phoenix, Arizona 85004
Tel: (602) 609-3800
Fax: (602) 609-3800
Direct: (602) 962-2969
Email:  ben.rundall@zwfirm.com
        joshua.spears@zwfirm.com

Jared G. Keenan (No. 027068)
Christine K. Wee (No. 028535)
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF ARIZONA**
3707 N. 7th St., Suite 235
Phoenix, Arizona 85014
Tel: (602) 650-1854
Email:  jkeenan@aclu.org
        cwee@aclu.org

Leah Watson, admitted *pro hac vice*
Scout Katovich, admitted *pro hac vice*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Email:  lwatson@aclu.org
        skatovich@aclu.org

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fund for Empowerment, et al.<br><br>                              Plaintiffs,<br><br>v.<br><br>City of Phoenix, et al.<br><br>                              Defendants. | Case No.: 2:22-cv-02041-GMS<br><br>**PLAINTIFFS' OPPOSITION TO INTERVENORS' MOTION TO DISMISS UNDER 12(B)(1) AND 12(B)(6) AND IN THE ALTERNATIVE TO ABSTAIN** |

## I.      INTRODUCTION

Instead of working with Plaintiffs to hold the City accountable for failing to find constitutional solutions to Phoenix's homelessness crisis, Intervenors pull back their proverbial mask and reveal their true intent is to remove all unsheltered residents from the Zone – even if doing so would result in a violation of these unsheltered individuals' constitutional rights. Throughout their motion, Intervenors stereotype those who find themselves unsheltered, proffering the non-factual assertion that someone can only become homeless "biologically," and inviting the Court to assume the Plaintiffs are

unsheltered "voluntarily." This is despite well-pled allegations to the contrary in Plaintiffs' First Amended Complaint and declarations from Plaintiffs confirming they tried to seek shelter and were turned away (and explaining in detail why they became unsheltered). Put simply, Plaintiffs (and those similarly situated) do not "choose" to be homeless.

Perhaps most offensive though is Intervenors' implication, without any evidence or relevance to Plaintiffs' claim, that Plaintiffs are "urinating and defecating on public property, in gutters, or on sidewalks…" Doc. 94 at 3. This is an unchallenged claim they have made about unsheltered people in other proceedings to scapegoat an entire community of people, distract from the real issues behind homelessness, and sensationalize their untried claims to the media. While the Intervenors' hostile feelings about unsheltered individuals are clear, the reality is that individuals primarily find themselves unsheltered for a variety of reasons including insufficient affordable housing, housing insecurity, medical debt, low wages, inadequate retirement benefits, and illness.[1] Put simply, most unsheltered individuals (many of whom are veterans and the elderly) do not "choose" to be without a home.[2] And they also do not deserve the unkind and inaccurate characterization dreamed up by Intervenors.[3]

---

[1] *See* Jim Cross, *Without a Home: Arizona's Lack of Affordable Housing Leaves Some with Nowhere to Go*, KTAR (June 13, 2023, 4:35 AM), https://ktar.com/story/5506453/without-a-home-arizonas-lack-of-affordable-housing-leaves-some-with-nowhere-to-go/; *see also* Anita Snow, *America's homeless ranks graying as more retire on streets*, AP NEWS (June 20, 2023, 4:23 PM) ("'We're seeing a huge boom in senior homelessness,' said Kendra Hendry, a caseworker at Arizona's largest shelter, where older people make up about 30% of those staying there. 'These are not necessarily people who have mental illness or substance abuse problems. They are people being pushed into the streets by rising rents.'").

[2] *See* Jessica Boehm, *2021 Arizona Homeless Numbers Show a Rise in Veteran Homelessness*, ARIZONA REPUBLIC (Feb. 15, 2022, 6:30 AM), https://www.azcentral.com/story/news/local/phoenix/2022/02/15/veteran-homelessness-arizona-increased-2021-but-decreased-across-most-country/6670302001/.

[3] Curiously, while Intervenors' counsel have repeatedly suggested in media interviews their intent is to help the unsheltered community by way of their suit, they do not represent

## II.   FACTS

Since 2010, the number of people experiencing homelessness in the City of Phoenix (the "City" or "Phoenix") has more than doubled. Doc. 45 ¶ 1. The rise in the number of individuals experiencing homelessness directly correlates with, and has been caused by, a lack of affordable housing and low wages. *Id*. at ¶ 29. The City exacerbated this crisis by shepherding people to the Zone, conducting unconstitutional sweeps, and destroying identification and survival equipment, which made it harder for unsheltered residents of the Zone to secure stable housing. *Id*. at ¶¶ 42–44. As of the time Plaintiffs respond to Intervenors' motion, the City still lacks sufficient shelter spaces for unhoused individuals and is woefully behind on goals to provide durable housing solutions.[4]

Plaintiffs Ronnie Massingille, Frank Urban, and Faith Kearns are unsheltered or chronically unhoused individuals who have been directly targeted by the City's unconstitutional actions. *Id*. at ¶¶ 19–21. All of them have experienced raids by the City which have resulted in the destruction of their property and exposure to criminal citation for sleeping, lying, or camping outside when they had nowhere else to go. *Id*. Each of them has struggled to obtain stable shelter for myriad reasons, none voluntary. *Id*. at ¶¶ 71, 87. Plaintiffs brought this suit to protect their rights, secured under the United States Constitution, and seek redress for those acts by the City which have terrorized the unhoused community.

---

any impacted unsheltered individuals and presented no evidence from unsheltered individuals in their state court proceedings. In other words, they have been allowed to continuously mischaracterize one of the most at-risk communities in the City without ever engaging with that community directly. *See* Juliette Rihl, *Judge Orders Removal of Tents from Phoenix's Largest Homeless Encampment,* ARIZONA REPUBLIC (Mar. 27, 2023, 6:04 PM),   https://www.azcentral.com/story/news/local/phoenix/2023/03/27/judge-orders-cleanup-phoenix-largest-homeless-camp/70054448007/.

[4] *See* Katya Schwenk, *Phoenix Starts to Clear the Zone—With No Beds for the Unsheltered Getting Evicted*, PHOENIX NEW TIMES (May 9, 2023, 7:23 PM), *https*://www.phoenixnewtimes.com/news/phoenix-starts-to-clear-the-zone-with-no-beds-for-the-unsheltered-who-live-there-16192189.

Similarly, since 2018, Plaintiff Fund For Empowerment ("FFE") has been forced to expend resources, including monetary resources, to conduct know-your-rights trainings for unsheltered individuals in response to the City's raids; provide resources and information to unsheltered individuals who are punished for sleeping outside; print flyers and handouts to disseminate to the unsheltered community to help them understand their rights when approached by police or city officials; and help individuals, who have been criminally cited, find legal help. *Id.* at ¶¶ 111–116; *see also* Doc 2-1 Venable Decl. ¶¶ 8–11. These significant resource expenditures, necessitated only by the City's unconstitutional actions, have forced FFE to forgo spending in areas directly related to its organizational purpose, which is "to help provide education, training, and leadership courses to the unsheltered community[,] . . . to advocate for long term and sustainable housing on behalf of the unsheltered community[, and] to provide leadership training . . . to those who are unsheltered." Doc. 45 at ¶¶ 117–118. These expenditures have also prevented FFE from distributing additional water and food and providing the unsheltered community with additional supplies to reduce their hardship and improve their health and quality of life during the sweltering summer months. *Id.* at ¶ 119.

## III.   LEGAL STANDARD

### A.   Failure to State a Claim under 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a complaint need only state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (noting a pleading should include "a short and plain statement of claim showing that the pleader is entitled to relief."). As such, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what…the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). When reviewing a motion to dismiss a party's claims, the facts recited in the complaint should be "viewed in the light most favorable to Plaintiffs." *Moss v. Secret Service*, 572 F. 3d 962, 967-68 (9th Cir. 2009).

And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While, ordinarily, in deciding a 12(b)(6) motion, a court only considers the complaint and documents it incorporates by reference, the Court may also consider matters of judicial notice, including the Court's Order granting Plaintiffs' motion for a preliminary injunction and Plaintiffs' filings and testimony in support of that motion. *See Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir. 1994); *see also United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("court may take judicial notice of its own records"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court may take judicial notice of "court filings and other matters of public record").

## B.    Article III Standing under 12(b)(1)

In a facial attack under Fed. R. Civ. P. 12(b)(1), "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In response to a facial challenge, a plaintiff need only demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action, and redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (citation omitted). Importantly, "where a 12(b) motion to dismiss is based on lack of standing, the reviewing court must defer to the plaintiff's factual allegations, and must 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Young v. Crofts*, 64 F. App'x 24, 25 (9th Cir. 2003) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *see also Harborview Fellowship v. Inslee*, 521 F. Supp. 3d 1040, 1046 (W.D. Wash. 2021) (in evaluating this standard, "[t]he truth of the complainant's allegations is presumed.").

## IV.    DISCUSSION

Plaintiffs' *Martin* claim for violation of their constitutional rights under the Eighth Amendment is well-pled. This claim, as well as Plaintiffs' Fourth and Fourteenth

Amendment claims are also properly raised by them. Additionally, while Intervenors are eager to disrupt any result which would safeguard the constitutional rights of unsheltered individuals, abstention here is unwarranted.

**A.** **Intervenors'12(b)(6) Claim Lacks Merit and Misinterprets Ninth Circuit Precedent in *Martin*.**

As this Court properly recognized, the Ninth Circuit has made clear that "'the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter' because no matter how 'sitting, lying, and sleeping' were defined 'they are universal and unavoidable consequences of being human.'" Doc. 34 at 6 (quoting *Martin v. Boise*, 920 F.3d 584, 616–17 (9th Cir. 2019)). "The formula established in *Martin* is that the government cannot prosecute homeless people for sleeping in public if there 'is a greater number of homeless individuals in [a jurisdiction] than the number of available shelter spaces." *Johnson v. City of Grants Pass*, 50 F.4th 787, 795 (9th Cir. 2022) (citing *Martin*, 920 F.3d at 617).

Plaintiffs' allegations in their First Amended Complaint are sufficient to state a claim under *Martin* and its progeny. Plaintiffs allege that the unsheltered population in Phoenix exceeds 3,000, while the City has only approximately 1,788 shelter beds. Doc. 45 ¶ 34. Despite this, Plaintiffs allege, "[t]he City commonly uses the Camping Ban, the Sleeping Ban, and other statutes against Plaintiffs to criminalize the act of being homeless and engaging in universal and unavoidable human activities such as sleeping." *Id.* ¶ 165. The Amended Complaint alleges that Plaintiff Kearns became chronically unsheltered "[d]ue to various medical issues and the costs associated with medical care," *id.* ¶ 71, Plaintiff Urban became chronically unsheltered "[d]ue to various medical issues," *id.* ¶ 87, and that Plaintiff Massingille is currently unsheltered, *id.* ¶ 100. Individual Plaintiffs Kearns, Urban, and Massingille have all been cited by the City in connection with their unsheltered status. *Id.* ¶¶ 82-83, 95-96, 107. Organizational Plaintiff Fund for Empowerment, whose membership includes unsheltered individuals, *id.* ¶ 113, "provides

training to the unsheltered community about their right to sleep outside in connection to the City's use of ordinances to criminalize sleeping," *id.* ¶ 116.

Based on these facts, this Court properly held that Plaintiffs are likely to succeed on their Eighth Amendment claim. Other courts in this Circuit have recognized that similar facts to those alleged by the Plaintiffs are sufficient to state a claim under *Martin*. *See Langley v. City of San Luis Obispo*, No. CV2107479CJCADSX, 2022 WL 18585987, at *3 (C.D. Cal. Feb. 7, 2022) (holding that Plaintiffs sufficiently stated an Eighth Amendment violation where their complaint alleged "that there is a far greater number of homeless people living in the City than the number of beds available" and that the challenged ordinances punish plaintiffs and other homeless individuals by virtue of their homelessness because the limited number of shelter beds leave them no choice but to sleep outdoors); *Anderson v. City of Portland*, No. CIV 08-1447-AA, 2009 WL 2386056, at *7 (D. Or. July 31, 2009) (denying motion to dismiss plaintiffs' Eighth Amendment claims where plaintiffs alleged city has far more homeless people than available shelter but has enforced ordinances against plaintiffs for lying or sleeping on public property and noting that "[g]iven that plaintiffs bring an as-applied challenge, precisely when, where and how the City enforces the anti-camping and temporary structure ordinances requires development of the facts"); *Boring v. Murillo*, No. LACV2107305DOCKES, 2022 WL 14740244, at *1 (C.D. Cal. Aug. 11, 2022) (denying motion to dismiss Eighth Amendment claim where plaintiffs alleged they are "unhoused individuals living on the streets of the City" who were expelled from public property and threatened by police officers for trespassing on public property and eating food while sitting on the sidewalk).

Intervenors' sole argument for Fed. R. 12(b)(6) dismissal of Plaintiffs' Eighth Amendment claim is that Plaintiffs have failed to allege (1) that they are "involuntarily homeless," and (2) that the City's enforcement of the Sleeping and Camping bans punishes their involuntary conduct. This argument is both unsupported by law and factually incorrect.

As an initial matter, Intervenors' argument fails because this Court has already decided that Plaintiffs do not bear the burden of establishing that they were involuntarily violating the sleeping and camping bans.[5] In ruling that Plaintiffs were likely to succeed on the merits of their Eighth Amendment claim, this Court explicitly decided that it is the City's burden to establish that violations of the camping and sleeping bans were voluntary. *See* Doc. 34 at 7 ("In this case, however, where the ordinances provide a criminal sanction, the City has appropriately conceded that it bears the burden of confirming that shelter space is not practically available to an individual before charging that person with violating either of the above ordinances."). This Court has been clear that where "it is not contested that there are more unsheltered individuals than shelter beds," "the City bears the burden of enforcing its ordinances against only those who can practically obtain shelter." *Id.* It necessarily follows that in order to state a claim under *Martin*, the Plaintiffs need not allege that they were "involuntarily homeless" and involuntarily sleeping or camping outside during each instance of enforcement in order to proceed with their Eighth Amendment claim.

Intervenors may not now demand that the Court reverse itself. Under the law-of-the-case doctrine, a court is "generally precluded from reconsidering an issue that has already been decided by the same court . . . in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (cleaned up). The Intervenors' motion to dismiss Plaintiffs' claim on the basis that they have not adequately alleged that they were involuntarily homeless when the City enforced the Sleeping and Camping Bans amounts to a request that the Court reconsider its ruling on the Preliminary Injunction.

---

[5] In deciding this Fed. R. Civ. P. 12(b)(6) motion, the Court may rely on this decision and the evidence it relied on through judicial notice. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

This is barred by the law of the case doctrine and requires denial of Intervenors' 12(b)(6) motion.[6]

Even if Intervenors' argument was not barred by the law of the case doctrine, it fails under Ninth Circuit precedent. Intervenors' argument that Plaintiffs' Eighth Amendment claim should be dismissed because they "fail[] to allege that the Plaintiffs have been penalized for any involuntary activity," turns settled Ninth Circuit precedent on its head. As this Court recognized in its Preliminary Injunction opinion, "*Martin* did not hold homeless persons bear the burden of demonstrating they are involuntarily homeless." *Johnson*, 50 F.4th at 811 n. 31; *see also* Doc. 34 at 6. Instead of requiring unsheltered plaintiffs to show that the act of sleeping outside is inseparable from their status as homeless, as Intervenors suggest, *see* Doc. 94. at 3, the Ninth Circuit has recognized that when shelter is not available, the act of sleeping outside is inextricably linked to their status and cannot be punished. *See Johnson*, 50 F.4th at 792 (9th Cir. 2022) ("[T]he number of homeless persons outnumber the available shelter beds. In other words, homeless persons have nowhere to shelter and sleep in the City other than on the streets or in parks."). As the court in *Jones* explained, "the conduct at issue here is involuntary and inseparable from status—they are one and the same, given that human beings are biologically compelled to rest, whether by sitting, lying, or sleeping," *Jones v. City of Los Angeles*, 444 F.3d 1118, 1136 (9th Cir. 2006), *vacated on other grounds*, 505 F.3d 1006 (9th Cir. 2007); *see also Martin*, 920 F.3d at 617 ("the state may not criminalize conduct that is an unavoidable consequence of being homeless — namely sitting, lying, or sleeping on the streets."). Here, Plaintiffs have alleged the unsheltered population far outnumbers shelter beds in Phoenix and that the City enforced criminal sleeping and

---

[6] None of the exceptions to the law of the case doctrine apply here. *See Minidoka Irrigation Dist. v. Department of Interior of U.S.*, 406 F.3d 567, 573 (9th Cir. 2005) ("The law of the case doctrine is subject to three exceptions that may arise when (1) the decision is clearly erroneous and its enforcement would mark a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.") (internal quotation marks and citation omitted).

1   camping bans against them while they were unsheltered. Under settled Ninth Circuit

2   precedent, these allegations are sufficient to show that sleeping and camping in public is

3   an involuntary consequence of homelessness and that the City's criminalization of

4   sleeping and camping violates the Eighth Amendment.

5       As part of their unsupported voluntariness argument, Intervenors claim that

6   Plaintiffs have not adequately alleged that "they have no choice with respect to residing on

7   public streets," including because they have not alleged that they are "incapable of making

8   choices," "have no family with whom they can stay," and because their possession of items

9   such as a VISA card on which social security disability income was loaded, identification

10  documents, and clothes (which the City destroyed during sweeps) "implies that they are

11  capable of obtaining and maintaining employment." Doc. 94 at 2-3. These arguments also

12  fail under Ninth Circuit precedent. In *Johnson*, the majority addressed similar speculation

13  by the dissent that one plaintiff there "may, in fact, not be involuntarily homeless in the

14  City." *Johnson*, 50 F.4th at 811. The *Johnson* majority firmly rejected the dissent's

15  insistence that the plaintiff prove that she had no choice but to be unsheltered in the city,

16  including by "provid[ing] the court an accounting of her finances and employment

17  history, and indicat[ing] with specificity where she lived before she lost her job and her

18  home." *Id.* As the *Johnson* majority explained, "[t]here, of course, exists no law or rule

19  requiring a homeless person to do any of these things" to demonstrate that they are

20  involuntarily homeless. *Id.*[7]

21      These speculative arguments also display Intervenors' ignorance of the realities of

22  the housing and homelessness crisis and what it is like to be unsheltered. Because the

23  average cost of housing in the United States far exceeds what a worker can afford working

24

25  _____

26  [7] Intervenors' brief also mischaracterizes Plaintiffs' Eighth Amendment claim. In a
    hysterical portion of the argument, Intervenors rant that laws against vagrancy, loitering,
27  pollution, barring public rights of way, and urinating and defecating in public "forbid
    actions," not unavoidable consequences of homelessness. MTD Br. at 3. This is
28  extraneous, alarmist, and ignores that the Plaintiffs' Amended Complaint does not
    challenge enforcement of any of these laws.

a minimum wage job, whether a person is capable of maintaining or even has employment has little bearing on whether their homelessness is "involuntary." In the United States, the wage needed for a full-time worker to afford a modest one-bedroom rental apartment in 2022 was $21.25 per hour, which is about three times higher than the federal minimum wage.[8] In Arizona, a full-time worker would need to earn $24.74 per hour to afford a one-bedroom rental, which is almost twice Arizona's minimum wage.[9] The shortage of affordable housing is even more likely to result in homelessness for Black and Latinx workers, who earn 23 and 25 percent less, respectively, than the median white worker.[10] Moreover, it is often futile for unsheltered people to seek what little shelter may be hypothetically available, because, for example, the admission criteria of many shelters excludes them; the strict entry and exit times of many shelters are incompatible with their work schedules, medical appointments, or other necessary activities; or requirements at many shelters that separate them from family, partners, or loved ones.[11] Intervenors' suggestion that Plaintiffs and others living on the streets of Phoenix are choosing to do so ignores these devastating realities.

### B. Plaintiffs have Standing to Assert their Eighth, Fourth, and Fourteenth Amendment Claims.

Plaintiffs have standing to assert their claims because they are currently unsheltered or chronically homeless, have been harmed by the City's challenged treatment of homeless people, and would continue to be at risk of harm from these practices absent a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016). Plaintiffs who are unsheltered "need not...await

---

[8] Nat'l Low Income Housing Coalition, *Out of Reach: The High Cost of Housing* (2022), at 1, https://nlihc.org/oor.

[9] Nat'l Low Income Housing Coalition, *Out of Reach: The High Cost of Housing—Arizona* (2022), https://nlihc.org/oor/state/az.

[10] *Out of Reach*, *supra*, note 2, at 9.

[11] *See* Suzanne Skinner & Sara Rankin, Seattle Univ. Sch. of Law; Homeless Rights Advocacy Project, *Shut Out: How Barriers Often Prevent Meaningful Access to Emergency Shelter* (2016), https://digitalcommons.law.seattleu.edu/cgi/viewcontent.cgi?article=1004&context=hrap.

an arrest or prosecution to have standing to challenge the constitutionality of a criminal statute." *Martin,* 920 F. 3d. at 609. Plaintiffs can also seek prospective relief from the court while they have temporary shelter. *See id.* at 607. "[T]he transitory nature of homelessness makes [plaintiffs who are not presently homeless] susceptible to the condition in the future…[meaning they] might become involved in the same controversy in the future despite their current lack of personal stake in the outcome." *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989), *citing United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 398-99 (1980); *see also Glover v. City of Laguna Beach*, 2017 WL 4457507, at *2 (C.D. Cal. June 23, 2017) (finding plaintiff's claims surrounding the city's homelessness policy ripe even though he was no longer homeless because the claims were capable of repetition yet evading review). Citing no controverting authority to the well settled understanding of this doctrine, Defendants merely assert Plaintiffs' allegations and declarations do not give rise to standing in connection to their Eighth, Fourth, and Fourteenth Amendment Claims.

### 1.    Ronnie Massingille, Faith Kearns, and Frank Urban

As unsheltered or chronically unhoused individuals living in the City of Phoenix, Plaintiffs Massingille, Kearns, and Urban have been subject to, or are at risk of, the exact harm described in the Complaint, i.e., criminal citation under two City of Phoenix Ordinances that prevent sleeping and camping outside in public spaces: Phoenix City Code Section 23-30(A) (the "Camping Ban") and Phoenix City Code Section 23-48.01 (the "Sleeping Ban"). The ordinances were enjoined by this Court "against individuals who practically cannot obtain shelter as long as there are more unsheltered individuals in Phoenix than there are shelter beds available." Doc. 34 at 19. As of the date of this Response, the City of Phoenix still lacks sufficient shelter space for the unsheltered population and is still citing individuals under these ordinances. *Id.*.

Plaintiffs have also pled and alleged seizure and destruction of their property during raids and increased risk of heat and infectious disease related dangers caused by

being pushed into the Zone by the City. Like the criminal ordinances at issue, the Court similarly enjoined the City from "[s]eizing any property of the unsheltered without providing" adequate notice and from "destroying said property without maintaining it in a secure location for a period of less than 30 days." *Id.* The Court's injunction recognizes that the challenged practices affect the "unsheltered population" and that judicial resolution of Plaintiffs' claims would provide redress for this population. Because individual Plaintiffs' uncontroverted allegations and declarations demonstrate that they have been subject to the City's practices and are chronically unsheltered, they have standing.

Starting with Mr. Massingille, Defendants concede the Complaint appropriately alleges he is "unsheltered." Doc. 94 at 5. Plaintiffs are under no obligation – and Intervenors cite no authority – requiring Mr. Massingille to disclose further information about the conditions of his status at this early stage of the litigation. Nevertheless, a cursory review of Mr. Massingille's declaration confirms he is chronically unhoused because of "complications from a medical issue which make it difficult for [him] to obtain steady employment." Doc. 17 ¶ 4. Mr. Massingille goes on to note how he has experienced at least "three raids" conducted by the City of Phoenix resulting in the "seizure and destruction of my property." *Id.* at ¶ 16. These raids and seizures have "created another substantial barrier to finding housing . . . ." *Id.* at ¶ 18.

Similarly, as Intervenors concede, the Complaint alleges that Mr. Massingille sleeps outside in various parts of the City, including the Zone. Doc. 45 ¶ 101. His declaration also confirms that he has lived in the Zone, that it is "terrible" to live there because of "sweeps, filth, and heat," and that he has been told by police "[o]n various occasions . . . to go to the Zone," which he believes "was the police's way of 'shepherding' him into the Zone." Doc. 17, ¶¶ 6, 15, 17. Mr. Massingille has also been criminally cited by the City in connection with his unsheltered status. Doc. 45 ¶ 107.

Similarly, while Plaintiff Urban has at times been housed, Intervenors ignore the Complaint and Mr. Urban's Declaration, which confirm that "due to various medical issues and lack of income, I have been chronically unhoused…off and on since 2000." Doc. 2-1 at 6; Doc. 45 ¶ 87. And even though Mr. Urban is currently in transitional housing, he further notes, "I am unable to pay for my own rent due to lack of income…[a]ccordingly, I could lose my house at any time in which case I would again be homeless." Doc. 2-1 at 8. Similarly, Ms. Kearns notes in her Declaration, "Due to various medical issues, I have been chronically unhoused," and that, in approximately 2008, she and Mr. Urban were "evicted for having too many pets," causing them to become unhoused. *Id.* at 2. She also notes that their pets have been "a barrier to getting housed" and that she has "never been able to obtain placement at a shelter for unhoused persons due to capacity or ineligibility." *Id.* ¶¶ 4, 12. Ms. Kearns also states in her declaration that she is in transitional, not permanent, housing. *Id.* ¶ 20. In other words, Mr. Urban and Ms. Kearns have been unsheltered, did not "choose" to be unsheltered, and are at risk of being unsheltered again.

Both Mr. Urban and Ms. Kearns have also been harmed by the City's unconstitutional practices. They have been criminally cited because of their unsheltered status and have had property seized and destroyed during the City's raids. Doc. 45 ¶¶ 74-83; 89-94; Doc. 2-1 Kearns Decl. ¶¶ 6, 10; Doc. 2-1 Urban Decl. ¶¶ 8, 14, 19-20. Both have also been told by the City to go to the Zone, placing them in increased danger of heat-related injury and infectious disease. Doc. 45 ¶ 195; Doc. 2-1 Kearns Decl. ¶ 13; Doc. 2-1 Urban Decl. ¶ 13. Ms. Kearns describes the Zone as a "terrible place to live," that she has "suffered multiple staph infections and heat stroke from my time at the Zone," and that the "heat was especially awful after police took away anything that provided shade." Doc. 2-1 Kearns Decl. ¶ 21. Mr. Urban also "experienced heat stroke [in the Zone] as a result of being in the heat without any shade (after police took my tent) on more than one occasion." Doc. 2-1 Urban Decl. ¶ 22.

Accordingly, Plaintiffs Massingille, Urban, and Kearns have pled sufficient facts and allegations to have standing to challenge the City's unconstitutional enforcement of the Sleeping and Camping Bans, its practice of seizing and destroying unsheltered peoples' property, and its practice of placing unsheltered people in danger by explicitly and implicitly sending them into the Zone. Defendant Intervenor's 12(b)(1) Motion as to these Plaintiffs should therefore be denied as to all counts.

### 2.      Fund for Empowerment

FFE has standing to sue on behalf of its members, who are currently or chronically unsheltered individuals who have not chosen to be homeless, and on its own behalf because it meets the requirements for standing applicable to organizations. An organization has associational standing to sue on behalf of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1285–86 (9th Cir. 1992) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Additionally, an organization meets the requirements for standing on its own behalf by demonstrating that the challenged activity has frustrated the organization's mission and caused a diversion of resources. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)); *see also* 6 Am. Jur. 2d Associations and Clubs § 33 ("The organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action, that the defendant's action or omission to act injured the organization's interest, and that the organization used its resources to counteract that harm, resulting in a consequent drain on the organization's resources.") (internal citations omitted).

FFE has sufficiently alleged facts that demonstrate standing on behalf of its members and its own behalf. In regard to its members, FFE plainly indicated in the

Complaint its "membership includes those who are unsheltered." Doc 45 ¶ 113. This is sufficient as neither the claims asserted, nor the relief requested, requires the participation of FFE's individual members in this lawsuit.

As for standing on its own behalf, the Complaint alleges that since 2018, FFE has been forced to expend resources, including monetary resources, to conduct know-your-rights trainings for unsheltered individuals in response to raids; provide resources and information to unsheltered individuals who are punished for sleeping outside; print flyers and handouts to disseminate to the unsheltered community to help them understand their rights when approached by police or city officials; and help individuals who have been criminally cited find legal help. Doc. 45 ¶¶ 111, 114-116; *see also* Doc. 2-1 Venable Decl. ¶¶ 8-12. These are significant resource expenditures, necessitated only by the City's unconstitutional actions, which have diverted FFE from its organizational mission.

Additionally, Intervenors do not challenge FFE's standing as to the Eighth Amendment claim on any basis other than by arguing (without support) that its members are voluntarily unsheltered. For the reasons stated in Section IV(a), *supra*, this argument fails. Intervenors do not challenge FFE's standing to bring Plaintiffs' Fourth and Fourteenth Amendment claims at all. *See* Doc. 94 at 5-8.[12] Because only a single plaintiff with standing is needed to assert a claim, Counts One, Two, Four, and Five necessarily survive. *See Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir.1993) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others.").

Because Plaintiffs have adequately alleged that its members are unsheltered and the City's illegal actions have injured and will continue to injure both FFE's membership

---

[12] Nor could they. *See* Venable Decl. ¶¶ 6, 8-11 (describing diversion of resources away from mission because of City's sweeps, property destruction, and criminal citation of unsheltered members); FAC ¶¶ 200-201 (unsheltered individuals served by FFE have been put at risk by City's practice of pushing them into the Zone).

and the organization itself absent judicial intervention, FFE has standing to bring this lawsuit.[13]

## V.   THIS COURT SHOULD NOT ABSTAIN

As this Court aptly noted, Defendant-Intervenors have a "tough road to hoe" in making any abstention arguments. May 26 Tr. at 10:10. That's because the Supreme Court has made clear abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). Because it is a drastic and limited remedy, Federal District Courts should only abstain "in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 189. This is not the case here. Rather, special caution should be applied because "cases involving vital questions of civil rights are the least likely candidates for abstention." *Canton v. Spokane School Dist. No. 81*, 498 F.2d 840, 846 (9th Cir. 1974).

Here, Defendant-Intervenors fail to meet the heavy burden necessary for this Court to abstain under *Colorado River*, *Pullman*, or *Younger*.

### A.   Colorado River

The ongoing litigation in *Brown v. City of Phoenix*, 1 CA-CV 23-0273 ("*Brown*") does not justify abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In sum, the *Brown* case is not sufficiently similar to the

---

[13] Intervenors also argue (incorrectly) that *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) requires dismissal of Plaintiffs' Fourth and, by extension, Fourteenth Amendment claims. *Lyons* does not propose Fourth Amendment violations can only be remedied through damages; rather, the case plainly states where a plaintiff has a "sufficient likelihood that he will again be wronged in a similar way" injunctive relief is available. *Id.* Here, Plaintiffs have done just that, alleging that they are chronically unsheltered or (in the case of FFE) have members and serve those who are chronically unsheltered, that the City has a policy or practice of unlawfully seizing the property of unsheltered individuals across Phoenix, and that Plaintiffs themselves have been subject to multiple unlawful seizures. *See Thomas v. County of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992) (allegations of being "repeatedly subject to police brutality and harassment" are "significant as the 'possibility of recurring injury ceases to be speculative when actual repeated incidents are documented.'") (citation omitted).

litigation at hand to meet the threshold requirement of parallel state proceedings; but even if the *Brown* case were sufficiently similar, the balance of the factors weighs heavily against *Colorado River* abstention.

*Colorado River* abstention applies where "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," justify dismissal of the federal suit. *Id.* at 817. A threshold requirement for *Colorado River* abstention is the existence of a parallel state case. "[T]he requirement of 'parallel' state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for all of the parties' claims." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.4 (9th Cir. 1993). Even "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a [*Colorado River*] stay." *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005) (quoting *Intel Corp.*, 12 F.3d at 913).

When examining a *Colorado River* claim for abstention, the Ninth Circuit has recognized eight factors for assessing the appropriateness of a stay or dismissal:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist." *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir.1988). And "[a]ny doubt as to whether a factor exists should be resolved against a stay." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

1    Here, abstention is inappropriate under *Colorado River* for two reasons. First, the

2    threshold requirement for abstention is not met because resolution of the *Brown* case will

3    not provide relief for Plaintiffs' constitutional claims. Even if the Intervenors were

4    granted full relief in state court, Plaintiffs' due process, unlawful seizure, status-based

5    criminal enforcement, and state-created danger claims would not be addressed—and

6    likely not raised at all.

7    Even if this Court finds the threshold requirement for *Colorado River* abstention is

8    met, however, the balance of the factors does not support abstention. Though *Fund for

9    Empowerment* was filed after *Brown*, implicating factor four, none of the remaining factors

10   favor abstention. Factors one and two are irrelevant in this case because the dispute does

11   not involve a specific piece of property, and both the federal and state forums are located

12   in the same city. *See R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir.

13   2011).[14]

14   The third factor, abstention to avoid piecemeal litigation, is appropriate only in

15   "very limited" circumstances. *Amerisource*, 495 F.3d at 1151, and does not favor

16   abstention here. The general rule is that "[e]ach court is free to proceed in its own way

17   and in its own time, without reference to the proceedings in the other court." *Kline v.

18   Burke Const. Co.*, 260 U.S. 226, 230 (1922). As Intervenors recognize, the state court

19   injunction in *Brown* "mandates the abatement of the public nuisance in the Zone while

20   expressly holding that *Martin* does not forbid that relief"—undermining their contention

21   that the current litigation "is likely to lead to state/federal conflict, if it hasn't already."

22   Doc. 94 at 9. Moreover, even if there was a potential for conflict, "'the mere potential for

23   conflict in the results of adjudications does not, without more, warrant staying exercise

24

---

25   [14] Intervenors incorrectly center their analysis of factor two on the inconvenience of
litigating two simultaneous cases and the possibility of conflict between the state and
26   federal proceedings. This is not the proper analysis. *See Colorado River*, 424 U.S. at 820
(inconvenience of 300-mile distance between state and federal court favors abstention
27   under factor two). Regardless, Intervenors' inapplicable argument also fails for the same
reasons as factor three.
28

of federal jurisdiction,' much less abdicating it entirely." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007) (quoting *Colorado River*, 424 U.S. at 816).

Next, the fifth factor—whether federal law or state law provides the rule of decision on the merits—weighs strongly against abstention. Federal law governs Plaintiffs' claims, which all arise under the federal constitution. In contrast, as Intervenors concede, the *Brown* suit only seeks relief based in state law and "any federal constitutional issues are, at best, defenses." Doc. 94 at 9. Because "the presence of federal-law issues must always be a major consideration weighing against surrender," abstention is inappropriate here. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). With respect to the sixth factor, the state court proceedings cannot adequately protect Plaintiffs' rights because Plaintiffs are not parties to the state court proceeding and that proceeding does not address the constitutional rights of the unsheltered. While the state court may be able to exercise jurisdiction over federal constitutional claims, as this Court recognized, the state court's March 27 Under Advisement Ruling indicated "there may be some hints that [this Court] might view the constitutional requirements different than the State Court has." May 26 Tr. at 8:21-23. Even if the Court were to find that this factor favored Intervenors, abstention would still be inappropriate because "this factor is more important when it weighs in favor of federal jurisdiction." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011) (cleaned up). Similarly, the seventh factor—forum shopping—does not support abstention. Here, unlike cases where courts have found forum shopping, Plaintiffs did not bring this federal action after litigating in state court. *See Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (federal court lawsuit filed after over three years of litigating in state court); *Am. Int'l Underwriters*, 843 F.2d at 1255–56 (plaintiff brought suit in federal court after filing in state court to avoid the state court's unfavorable evidentiary rules). This circuit is "cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously

unasserted claims in federal court." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 982 (9th Cir. 2011). Stated directly, the "forum shopping" label is not warranted here.

Last, and perhaps most important, the eighth factor weighs decisively against abstention, as the state court proceedings will not resolve any, let alone all, of the claims raised in Plaintiffs' complaint. None of the claims in *Brown* address the constitutional rights of Phoenix's unsheltered population. As Intervenors seem to acknowledge, the constitutional issues central to Plaintiffs' claim for relief could be raised in the *Brown* case "at best, [as] defenses to that underlying state-law cause of action." Doc. 94 at 9. And, as the State court already determined, it need not address *Martin* or other constitutional claims related to the treatment of unsheltered individuals in order to resolve the *Brown* dispute. *See* State Court Ruling at 22 ("the City has discretion in how to comply with this Order and [the Court] does not direct with specificity any of the myriad actions that would lead to compliance"); *id.* at 20 (*Martin* and its progeny do not "preclude municipalities from abating a nuisance"). Moreover, because the *Brown* case only addresses the Zone, it is impossible for that proceeding to resolve all of Plaintiffs' claims, which address the City's treatment of Phoenix's unsheltered population throughout the City.

**B.    Pullman**

*Pullman* abstention authorizes district courts to postpone "the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). "[S]o as to 'give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims,' courts have held that the [*Pullman* abstention] doctrine should rarely apply." *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1036 (D. Ariz. 2018), *vacated on other grounds and remanded*, 789 F. App'x 589 (9th Cir. 2020 (quoting *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003)).

Because it rarely applies, the court only has discretion to abstain under *Pullman* when the following three factors are met:

> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain.

*Courthouse News Serv. v. Planet*, 750 F.3d 776, 783–84 (9th Cir. 2014) (citation omitted).

On the first prong, Plaintiffs assert the constitutional rights of unsheltered individuals against city laws, policies, and practice which Federal courts regularly adjudicate. *See, e.g.*, *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1024 (9th Cir. 2012) (addressing Fourth and Fourteenth Amendment rights of unsheltered individuals when state actors destroy their property during sweeps); *Kincaid v. City of Fresno*, No. 06-CV-1445, 2006 WL 3542732, at *37 (E.D. Cal. Dec. 8, 2006) (same); *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) (finding that City's issuance of citations for sleeping in public when no alternatives existed violated Eighth Amendment rights of unsheltered individuals); *Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022) (same).

The second prong is also not met because resolution of the state law issues in *Brown* would not moot or even narrow Plaintiffs' constitutional claims here. "The Ninth Circuit has consistently found this requirement satisfied where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks." *Lomma v. Connors*, 539 F. Supp. 3d 1094, 1102 (D. Haw. 2021) (citation omitted). If the *Brown* plaintiffs succeed in obtaining a declaration that the Zone constitutes a public nuisance and an injunction ordering the City to abate that public nuisance, none of Plaintiffs' claims here would be mooted or changed.[15] *See Almodovar v. Reiner*, 832 F.2d 1138, 1140–41 (9th Cir. 1987) ("All of plaintiff's constitutional claims would be moot if the state supreme

---

[15] Additionally, even if the State court somehow addressed the constitutional rights of unsheltered people in the Zone, Plaintiffs' city-wide claims would not be resolved, nor would the legal issues be narrowed.

court decides that the statutes do not apply to making films of sexual activity. Pullman abstention was designed especially for this sort of narrowing construction."); *Briseno v. Bonta*, No. 221CV09018ODWPDX, 2022 WL 3348940, at *6 (C.D. Cal. Aug. 12, 2022) (finding *Pullman* abstention appropriate where resolution of a parallel state court case would result in plaintiffs in the federal case "obtain[ing] their requested relief . . . thereby mooting the controversy and eliminating the need for this Court to adjudicate Plaintiffs' federal constitutional claims."). Intervenors turn this prong of the *Pullman* test on its head, asserting that if the state court requires abatement but "allows the City to do so without violating the rule in *Martin* . . . then the federal constitutional questions are entirely avoided." Doc. 94 at 12. But "allow[ing]" the City to comply with the Constitution, does nothing to resolve or narrow Plaintiffs' claims, which ask the Court to *require* the City to follow the Constitution.

Finally, the third prong, uncertain resolution of a possibly determinative state law issue, is also not met here. First, the state law issues in *Brown*—whether the City created or maintained a public nuisance in the Zone and whether its alleged failure to enforce certain laws in and around the Zone violates the state constitution—are not possibly determinative of this case. Nor are the legal issues uncertain. "An outcome is not 'doubtful' or 'uncertain' just because it turns on the facts of the particular case." *Pearl Inv. Co. v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1464 (9th Cir. 1985); *see also Los Angeles All. for Survival v. City of Los Angeles*, 987 F. Supp. 819, 825 (C.D. Cal. 1997), aff'd, 224 F.3d 1076 (9th Cir. 2000) ("because the Ordinance challenged here is not ambiguous and because the controlling precedents do not conflict, this case does not present an unclear issue of state law, and Pullman abstention is inappropriate"); *Carreras v. City of Anaheim,* 768 F.2d 1039, 1043 n.5 (9th Cir. 1985) (holding *Pullman* abstention inappropriate because there is no substantial uncertainty as to the meaning of the

California Liberty of Speech Clause when applied to action challenging city ordinance regulating solicitation).[16]

**C.   Younger**

*Younger* abstention is only appropriate:

> [1] If a state-initiated proceeding is ongoing, and [2] if it implicates important state interests, and [3] if the federal litigant is not barred from litigating federal constitutional issues in that proceeding, [and, 4] a federal court action []would enjoin the proceeding, or have the practical effect of doing so.

*Amerisource*, 495 F.3d at 1149. *Younger* abstention requires each of these factors be strictly satisfied, meaning "when each of an abstention doctrine's requirements are not strictly met, the doctrine should not be applied." *Id.* at 1148. Here, the second and fourth factors are not satisfied, and *Younger* abstention must therefore be declined

The second *Younger* factor is satisfied only when "the State's interests in the [ongoing] proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). The Ninth Circuit has made clear that "[t]he importance of the [state's] interest is measured by considering the significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003); *see also Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir. 1984) ("[A] challenge[ ][to] only one . . . order, not the whole procedure" is "not a substantial enough interference with [a state's] administrative and judicial processes to justify abstention."). Here, Intervenors' concerns regarding the resolution of *Brown* fail to rise to the level of broad significance required to implicate important state interests under the second *Younger* abstention factor.

---

[16] Moreover, in a similar case involving allegations that a city's practices relating to unsheltered individuals violated the Eighth Amendment under *Martin v. Boise*, the Southern District of Ohio declined to abstain based on the fact that an injunction banning homeless encampments had been entered in a state court proceeding. *See Phillips v. City of Cincinnati*, No. 1:18-CV-541, 2020 WL 4698800 (S.D. Ohio Aug. 13, 2020).

Indeed, the resolution of Intervenors' nuisance claim is necessarily fact specific and, thus, any interest the state has in its resolution is limited to the individual case rather than a broad state interest. Intervenors' characterization of the state interest here is also disingenuous at best. First, they assert that the issues involved relate to homelessness and "providing humanitarian relief to the unsheltered population." Doc. 94 at 14. But what Intervenors seek is not relief for the unsheltered population or a sustainable solution to the homelessness crisis, but expulsion of homeless individuals without regard to their rights. Then, they list a series of laws and ordinances "against public nuisance and the preservation of public order" enforcement of which they assert Plaintiffs' relief would prevent. But Plaintiffs' case only challenges enforcement of the Camping and Sleeping ban, not statutes related to public nuisances.

Next, under the fourth factor, *Younger* abstention is improper because the ongoing state court proceedings in *Brown* would not be actually or effectively enjoined. Defendant-Intervenors' conjectural objection that the current proceeding "could enjoin" the relief ordered in *Brown* does not rise to the level of certainty necessary to satisfy the fourth *Younger* factor. Doc. 94 at 15. "As the Supreme Court has held, 'the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction,' much less abdicating it entirely." *Amerisource*, 495 F.3d at 1151 (quoting *Colorado River*, 424 U.S. at 816). In fact, "the Supreme Court has rejected the notion that federal courts should abstain whenever a suit involves claims or issues simultaneously being litigated in state court." *Id.* The Ninth Circuit has similarly rejected the argument "that the requisite interference with ongoing state proceedings occurs whenever the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it." *Id.* A potential for conflict here is not sufficient to satisfy the fourth *Younger* factor and no actual conflict exists.

Intervenors falsely claim that Plaintiffs seek an order that would "directly interfere with and enjoin the ongoing state-court proceedings." Doc. 94 at 15. But the only order Plaintiffs seek is one that would require the City to comply with the Constitution.[17] As the *Brown* court itself recognized, the requirement that cities respect the constitutional rights of unsheltered individuals, as articulated in *Martin* and its progeny, do not "preclude municipalities from abating a nuisance, arresting violent offenders, enforcing laws against drugs and violence, or enforcing laws against biohazards and pollution of public waters." *Brown* Order at 20. Similarly, Intervenors' assertion that Plaintiffs' requested relief would prohibit the City from "engag[ing] in certain clean-up actions to abate a specific public nuisance" ordered by the state court is contradicted by the state court order, which explicitly declines to "direct with specificity any of the myriad actions that would lead to compliance." *Id.* at 22. Intervenors' arguments reveal what they really want: to require the City to trample on the Constitutional rights of the most vulnerable members of our society. The Court should reject Intervenors' mischaracterization of Plaintiffs' relief and continue to require that the City respect unsheltered people's constitutional rights.

Because the interests at stake in *Brown* do not rise to the level of broad significance necessary to support abstention, and the current federal proceedings would not actually or effectively enjoin the ongoing state court proceedings, *Younger* abstention is improper here.

---

[17] Contrary to Intervenors' suggestions, Plaintiffs' Request for Modification of Preliminary Injunction only sought "to prevent further sweeps in the Zone . . . *until the City can ensure compliance with this Court's order and the constitutional rights of the unsheltered.*" Doc. 59 at 3 (emphasis supplied).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request Intervenors' motion be denied in its entirety.

RESPECTFULLY SUBMITTED this 21st day of June, 2023.

**ZWILLINGER WULKAN PLC**

By:   /s/ *Benjamin L. Rundall*
Benjamin L. Rundall
Joshua Spears
2020 North Central Avenue, Suite 675
Phoenix, Arizona 85004

**AMERICAN CIVIL LIBERTIES UNION OF ARIZONA**

By:   /s/ *Jared G. Keenan*
Jared G. Keenan
Christine K. Wee
3703 N. 7th St., Suite 235
Phoenix, Arizona 85014

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

By:   /s/ *Leah Watson*
Leah Watson, pro hac vice
Scout Katovich, pro hac vice
125 Broad Street, 18th Floor
New York, New York 10004

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the District of Arizona by using the CM/ECF System. All participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ *Tricia Jochum*