Benjamin L. Rundall (No. 031661)
**ZWILLINGER WULKAN PLC**
2020 North Central Avenue, Suite 675
Phoenix, Arizona 85004
Tel: (602) 609-3800
Fax: (602) 609-3800
Direct: (602) 962-2969
Email:  ben.rundall@zwfirm.com

**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF ARIZONA**
Jared G. Keenan, State Bar No. 027068
Christine K. Wee, State Bar No. 028535
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
Tel: (602) 650-1854
Email:  jkeenan@acluaz.org
               cwee@acluaz.org

**AMERICAN CIVIL LIBERTIES UNION**
Leah Watson (admitted pro hac vice)
Scout Katovich (admitted pro hac vice)
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
Email**:**  lwatson@aclu.org
               skatovich@aclu.org

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fund for Empowerment, et al. | Case No. CV-22-02041-PHX-GMS |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO MODIFY PRELIMINARY INJUNCTION AND MOTION FOR EXPEDITED CONSIDERATION AND EMERGENCY STATUS CONFERENCE** |
| v. | |
| City of Phoenix, et al. | |
| Defendants. | |

For their response to City Defendants' Motion to Modify Injunction, Plaintiffs state as follows:

## I.  The Amended *Grants Pass* Opinion Does Not Require This Court to Alter Its Injunction.

The City of Phoenix (the "City") asks this Court to modify its preliminary injunction (Dkt. No. 34 or "Motion") to disregard the constitutional protections of unhoused individuals to (1) effectively endorse their eviction from the Zone through any means the City sees fit, and to (2) allow the City to resume enforcement of its Camping and Sleeping Bans, so long as the City can find some other "alternative public, outdoor space" where an unhoused individual can be moved. To justify this sweeping revision (and near-dissolution) of the existing injunction, the City points to the Ninth Circuit's amended opinion in *Johnson v. City of Grants Pass*, 72 F. 4th 868 (9th Cir. 2023) (the "Amended Opinion"). But the City overstates the minimal amendments to the *Grants Pass* opinion, which does not fundamentally alter the basic holding of *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), nor address whether outdoor space satisfies the prerequisite for enforcement of Camping and Sleeping Bans under *Martin*. The City also fails to present the Court with a change in facts that would merit revision of the preliminary injunction. Accordingly, the Court should reject the City's improper request for an advisory opinion untethered to a change in facts or law.

### A.  The Amended Opinion does not change *Martin*'s holding or address whether alternative outdoor space satisfies *Martin*.

The only change to the *Grants Pass* Amended Opinion appears in a single paragraph, with the removed language indicated in strikethrough and the added language in red:

> ~~The formula established in *Martin* is that the government cannot prosecute homeless people for sleeping in public if there "is a greater number of homeless individuals in [a jurisdiction] than the number of available" shelter spaces. Id. (alteration in original).~~ Pursuant to *Martin*, it is an Eighth Amendment violation to criminally punish involuntarily homeless persons for sleeping in public if there are no other public areas or appropriate shelters where those individuals can sleep. *Id.* at 617 n.8 ("Naturally, our holding does not cover individuals who *do* have access to adequate

temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it."). When assessing the number of shelter spaces, *Martin* held shelters with a "mandatory religious focus" could not be counted as available due to potential violations of the First Amendment's Establishment Clause. *Id*. at 609-10 (citing *Inouye v. Kemna*, 504 F. 3d 705, 712-13 (9th Cir. 2007)).

72 F.4th at 877. The City argues the disjunctive language in the added sentence ("no public areas *or* appropriate shelters"), combined with the removal of language in the prior panel opinion referring to "[t]he *formula* established in *Martin*,"[1] creates "a more flexible recitation of the law," under which the City may resume enforcement of its Camping and Sleeping Bans, even if there are no shelter beds available for unhoused individuals, "so long as there are alternative *public spaces*." Mot. 6 (emphasis added).

The revised *Grants Pass* opinion, however, does not support the City's interpretation they may now enforce the Camping and Sleeping Bans *carte blanche* without first confirming reasonably suitable alternative spaces. Indeed, the opinion in *Grants Pass*, explicitly confirms the key holding in *Martin* which noted the "'Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter.'" Amended Opinion, 72 F.4th at 877 (quoting *Martin*, 920 F.3d at 616). If anything, the amended decision in *Grants Pass* merely reemphasized that "access to adequate temporary shelter" is another prerequisite for enforcement of similarly situated Camping and Sleeping Bans.[2]

As a result, the City's argument the amended *Grants Pass* decision allows any undefined outdoor space to constitute as "shelter" for purposes of *Martin* is foreclosed by

---

[1] *Johnson v. City of Grants Pass*, 50 F. 4th 787, 795 (9th Cir. 2022), *amended on reh'g* 72 F.4th 868 (9th Cir. 2023).

[2] Importantly, Plaintiffs would also note that one panel opinion cannot overrule another, explicitly or implicitly. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("[A] later three-judge panel considering a case that is controlled by the rule announced in an earlier panel's opinion has no choice but to apply the earlier-adopted rule; it may not any more disregard the earlier panel's opinion than it may disregard a ruling of the Supreme Court.").

what remains unchanged in the Amended Opinion. Indeed, the Court specifically proclaimed it is "not decid[ing] whether alternate outdoor space would be sufficient under *Martin*" and expressly declined to make any pronouncement about whether an unhoused individual may lawfully be punished for sleeping or camping outside if they have access to alternate outdoor space because, as is the case here, "the City has not established any realistically available place within the jurisdiction for involuntarily homeless individuals to sleep." *Id.* Amended Opinion, 72 F.4th at 894 n.33. Additionally, as in *Grants Pass*, Phoenix's Sleeping and Camping Bans cover the entire City with no exceptions, and the City has identified no legal outdoor place where unhoused people can sleep. So, like the panel in *Grants* Pass, here, this Court should decline to depart from Ninth Circuit precedent when no reasonably suited alternative space has been identified by the City.[3]

**B.** **Neither the Amended Opinion, nor the facts presented by the City should alter this Court's analysis of time, place, and manner restrictions.**

*Martin* and *Grants Pass* have always acknowledged that "an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible." *Martin*, 920 F.3d at 617 n.8. The Amended Opinion had nothing new to say about time, place, and manner restrictions, but, instead, reiterated the principle that "a city is not required to … allow anyone who wishes to sit, lie, or sleep on the streets … at any time and at any place." 72 F.4th at 877 (quoting *Martin*, 920 F.3d at 617; *Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated as moot* 505 F.3d 1006 (9th Cir. 2007)).

Indeed, Plaintiffs agree *Martin* or *Grants Pass* has never prevented the City from enacting reasonable time, place, and manner restrictions. Rather, the City confuses the case law in failing to recognize that the enforcement, not enactment, of such laws on

---

[3] Nor do the district court decisions cited by the City support their requested relief. *See* Mot. 7. The City merely copies and pastes the cases and parentheticals that *Grants Pass* considered and determined were inapplicable because, unlike Grants Pass and Phoenix, those cases involved jurisdictions with "lawful places within the jurisdiction for involuntarily homeless individuals to sleep." *Id.*

involuntarily unhoused individuals gives rise to a potential Eighth Amendment violation. *Jones*, 444 F.3d at 1138 ("By our decision, we in no way dictate to the City that it must … allow anyone who wishes to sit, lie, or sleep on the streets of Los Angeles at any time and at any place within the City. All we hold is that, so long as there is a greater number of homeless individuals in Los Angeles than the number of available beds, the City may not *enforce* section 41.18(d) at all times and places throughout the City against homeless individuals for involuntarily sitting, lying, and sleeping in public.").

While the City wants this Court's blessing to move unhoused individuals out of the Zone, nothing in *Grants Pass*, *Martin*, or any other Ninth Circuit decision warrants such an endorsement, especially as the Sleeping and Camping Bans still apply to *all* public places at *all* times. *id.* at 5. The City's arrest records confirm that the City has continued to enforce the Sleeping and Camping Bans outside of the Zone since the issuance of the preliminary injunction. Ex. A. Similarly, the City's vague allusion to an "alternative public location within the jurisdiction that will accommodate tents or other temporary shelter from the elements" neither changes the City's blanket prohibitions on sleeping and camping, nor transforms those laws into reasonable time, place, and manner restrictions. Mot. 8. "[B]ecause the problematic ordinances remain unamended," so too should this Court's preliminary injunction. Mot. 7 (recognizing that a statement of administrative policy does not alter the preliminary injunction analysis).

## II. Lawful Enforcement of Any Revised Sleeping or Camping Ban Would Turn on Whether Alternate Space Is Reasonably Suited to the Needs of Those Who Are Involuntarily Unhoused.

Even if this Court is inclined to provide advisory guidance to the City regarding the constitutionality of outdoor shelter space, Plaintiffs urge the Court to prohibit the City from enforcing the Camping and Sleeping Bans against unhoused individuals unless they have immediate access to outdoor space that is reasonably suited to their individualized needs. Indeed, the amended *Grants Pass* decision does nothing to disrupt the holding in

*Martin* which instructs that the City must provide individualized assessments to determine "access to *adequate* temporary shelter." 920 F. 3d at 617 n.8 (emphasis added). A person against whom sleeping or camping bans are enforced should, where possible, be given the choice of a specific shelter that is "practically" or "realistically available to them." *Id.*

Importantly, that choice may not require a person to give up their rights in the process. *See Parks v. Watson*, 716 F. 2d 646, 650 (9th Cir. 1983) ("the government may not impose a choice between the government benefit and the exercise of a constitutionally guaranteed right"). All of this requires a more discerning analysis than simply determining that outdoor public space is open and will fit "tents or other temporary shelter." Mot. 8. Indeed, "[c]alling a plot of land a shelter does not make it so." *Warren v. City of Chico*, No. 221CV00640, 2021 WL 2894648, at *3 (E.D. Cal. July 8, 2021) (rejecting argument that outdoor temporary shelter at city's airport was "shelter" that permitted city to criminalize resting in public"). Accordingly, before the City is effectively allowed to recriminalize the state of being unhoused by being freed from the preliminary injunction's terms (i.e., by being permitted to enforce the Camping and Sleeping Bans without restriction), it must provide assurances that its "shelters" for unhoused individuals take individual circumstances into account. And those circumstances may demand, in the case of certain individuals, that "adequate shelter" can only be provided indoors.

Moreover, any temporary arrangement should be time-limited—or, at least, routinely updated—to ensure that any shelter remains "adequate." An outdoor shelter may be adequate in a mild winter, together with "the most rudimentary precautions to protect [unhoused individuals sleeping in an outdoor shelter] from the elements." *Grants Pass*, 72 F. 4th at 891. But that shelter may not be adequate come summer, especially if unhoused individuals are exposed to the open air and heat. *E.g.*, *Sacramento Homeless Union v. Cnty. of Sacramento*, No. 22-cv-1095, 2023 WL 5835750, at *2 (E.D. Cal. Aug. 3, 2023) (enjoining the "widespread clearing of encampments, which displaces unhoused

individuals from areas of protection from the sun and heat into more exposed areas"). Indeed, as Plaintiffs have alleged in their Complaint, heat related deaths are an epidemic caused by the City's continued use of outdoor spaces to redress the needs of those who are voluntarily unhoused.

### III.   To the Extent That this Court Modifies the Preliminary Injunction, It Should Do So in A Manner That Aligns with *Martin* and *Grants Pass*.

While Plaintiffs believe this Court's current injunction aligns with the Amended Decision in *Grants Pass,* they also note that any modification should only affect the first of the three prongs of this Court's injunction.[4] Plaintiffs also affirmatively reject the three modifications requested by the City and argue they are untethered to *Grants Pass* and *Martin* for the following reasons:

**Closure of the Zone.** The City asks this Court to "permit[] the City to close the area Plaintiffs refer to as the 'Zone' to camping by November 4, 2023." The City does not say why, other than to gesture vaguely at the fact that it "may be forced to choose between violating one injunction or the other." Mot. 2. But the City does not explain how modifying the injunction to endorse closure of the Zone would make that burden any easier. And it is unclear whether it is appropriate at all for this Court to enforce the *Brown* court's order—this case is not, after all, a nuisance action about the Zone, but a lawsuit about Plaintiffs' rights to not be subjected to unconstitutional enforcement action or

---

[4] The order preliminarily enjoined the City, its agents and employees from doing any of the following:

1.   Enforcing the Camping and Sleeping Bans against individuals who cannot practically obtain shelter as long as there are more unsheltered individuals in Phoenix than there are shelter beds available;

2.   Seizing any property of the unsheltered without providing prior notice at the property's location that the property will be seized, unless the agent or employee has an objectively reasonable belief that it is (a) abandoned, (b) presents an immediate threat to public health or safety, or (c) is evidence of a crime or contraband; and

3.   Absent an immediate threat to public health or safety, destroying said property without maintaining it in a secure location for a period of less than 30 days.

Mot. 19.

property seizure. *Cf. Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F. 3d 96, 122 (2d Cir. 2017) ("Actions to enforce state court judgments in federal court are rare."). The City also does not explain why this Court's preliminary injunction, which is in place to protect rights guaranteed by the federal Constitution, must give way to a state-court order on a state-law nuisance claim. *Cf. Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015) (the Supremacy Clause "creates a rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' They must not give effect to state laws that conflict with federal laws."). Interlocutory safeguards that preserve and protect constitutional rights should not be lifted simply because the City finds them inconvenient.

More importantly, *Grants Pass* has no effect on the property-based underpinning of the injunction—i.e., that the injunction protects the property rights of unhoused individuals. "Closing" the Zone will inevitably require moving personal effects—indeed, the City admits as much. As one court observed in *Lavan v. City of Los Angeles*, "before the city can seize and destroy [unsheltered individuals'] property, it must provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner, except in extraordinary situations where some valid governmental interest is at stake that justifies the postponing of the hearing until after the event." 797 F. Supp. 2d at 1016-17 (internal citations omitted). *Grants Pass* did not alter this obligation. Nor did it opine at all on the Fourth Amendment's prohibition on unreasonable seizure. U.S. Const. Amend IV. Because the City's obligation remains unchanged after the amended *Grants Pass* order, this Court should maintain the prohibition on the seizure of property without "notice as to when [sic] property will be deemed abandoned and taken, nor an opportunity to retrieve those items before they are destroyed." Mot. 10.

**Allowing the City to move the Zone's residents to other outdoor public areas, and to resume enforcement of the Camping and Sleeping Bans.** Similarly, the City's request for permission to redefine "shelter" to encompass all indoor and outdoor options,

including placements never considered in *Grants Pass*, is a thinly veiled attempt to eliminate any precondition to the enforcement of the Camping and Sleeping Bans. For the reasons explained above, this change would be antithetical to *Martin* and *Grants Pass*. Even assuming, however, that "public, outdoor space" writ large can theoretically constitute "shelter" for purposes of the Eighth Amendment, the City's approach leaves no room to determine whether such a space constitutes shelter for a particular individual—*i.e.*, whether, in fact, the public area provides the individual with "access to *adequate* temporary shelter." *Martin*, 920 F. 3d at 617 n.8 (emphasis added). In fact, the City provides no details at all on where individuals within the Zone are to be relocated, or how the City will ensure that an "outdoor space[]" is "safe."

**Confirming the City's Understanding of *Grants Pass*.** As explained above, the City's argument that "shelter" means any outdoor place "for an unsheltered person to go" is unfounded under *Grants Pass*. Accordingly, this Court should reject the City's attempt to retool the preliminary injunction into a facility for violating the Constitution. The preliminary injunction faithfully applied the Ninth Circuit's Eighth Amendment caselaw, and *Grants Pass* (in both its original or amended form) did not alter that caselaw in any way that is material to the injunction here.

If this Court determines that some change to the preliminary injunction is necessary to ease the City of its so-called Catch-22,[5] any change must comport with *Martin* and *Grants Pass*: all unhoused individuals in the City must have "access to adequate temporary shelter" before the City can begin enforcing the Camping and Sleeping Bans on unhoused individuals and the City must continue to provide notice and an opportunity to be heard before destruction of unhoused individuals' belongings. To the extent that the Zone's residents are to be relocated elsewhere, they should be relocated to

---

[5] A Catch-22 arises when contradictory logic results in a paradox, not when there are "mutually conflicting obligations." Mot. 1. In any event, there is nothing "mutually conflicting" about the preliminary injunction in this case and the order in *Brown*: the City can comply with both by providing the Zone's residents with adequate shelter.

a place with adequate shelter based on an individualized assessment—and should have the assurance that they will not be subjected to the City's enforcement whims upon their relocation.

RESPECTFULLY SUBMITTED this ___ day of October, 2023.

**ZWILLINGER WULKAN PLC**

By: /s/ *Benjamin L. Rundall*
Benjamin L. Rundall
2020 North Central Avenue, Suite 675
Phoenix, Arizona 85004

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA**

By: /s/ *Jared G. Keenan (with permission)*
Jared G. Keenan
Christine K. Wee
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014

**AMERICAN CIVIL LIBERTIES UNION**

By: /s/ *Leah Watson (with permission)*
Leah Watson (admitted pro hac vice)
Scout Katovich (admitted pro hac vice)
125 Broad Street, 18th Floor
New York, NY 10004

*Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2

  I hereby certify that on October 17, 2023, I electronically filed the foregoing with

3

the Clerk of the Court for the U.S. District Court for the District of Arizona by using the

CM/ECF System. All participants in the case who are registered CM/ECF user will be

4

served by the CM/ECF system.

5

 */s/ Benjamin L. Rundall*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28