Justin S. Pierce (State Bar #022646)
Aaron D. Arnson (State Bar # 031322)
Trish Stuhan (State Bar # 027218)
Stephen B. Coleman (State Bar # 021715)
**PIERCE COLEMAN PLLC**
7730 E. Greenway Road, Suite 105
Scottsdale, AZ 85260
Tel. (602) 772-5506
Fax (877) 772-1025
Justin@PierceColeman.com
Aaron@PierceColeman.com
Trish@PierceColeman.com
Steve@PierceColeman.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Fund for Empowerment, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>City of Phoenix, et al.,<br><br>Defendants. | Case No: 2:22-cv-02041-PHX-GMS<br><br>**DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION ORDER** |

Defendants City of Phoenix, Rachel Milne, and Michael Sullivan, as well as formerly named Defendant Jeri Williams (collectively, the "City"), move to dissolve the Court's Order entering preliminary injunction in this matter. In December 2022, after an evidentiary hearing, the Court issued an Order granting in part and denying in part Plaintiffs' request for a preliminary injunction. Doc. 34 (the "Order"). The Order enjoined the City from: (1) enforcing its camping and sleeping bans against individuals who practically cannot obtain shelter as long as there are more unsheltered individuals in

1

the City than there are shelter beds available;[1] (2) seizing property of the unsheltered without providing prior notice at the property's location that the property will be seized absent an objectively reasonable belief that the property is abandoned, an immediate threat to public health or safety, or evidence of a crime or contraband; and (3) destroying seized property without maintaining it in a secure location for no less than 30 days, absent an immediate threat to public health and safety. *See id*. at 19.

Much has changed since the December 2022 evidentiary hearing and subsequent issuance of the Order. First, there has been a significant change in the law. On June 28, 2024, the U.S. Supreme Court ruled that the enforcement of generally applicable laws regulating camping on public property does not constitute "cruel and unusual punishment" prohibited by the Eighth Amendment, overturning contrary Ninth Circuit authority. *See City of Grants Pass v. Johnson*, No. 23-175, 144 S. Ct. 2202 (2024). Second, the facts underlying the Order have changed significantly. Specifically, the downtown area that Plaintiffs refer to as "the Zone" has been dismantled, eliminating the routine, large-scale cleanups and disposition of property with which Plaintiffs were primarily concerned. Moreover, since the hearing, the Court has received evidence that the City has adopted consistent, citywide policies for the treatment of property both within and outside of "the Zone," the lack of which drove the Court's entry of the Order in significant part.

These significant changes in law and fact warrant dissolving the Court's Order. After the Supreme Court's decision, there is no longer a legal basis to prohibit the City from enforcing its camping and sleeping bans against unsheltered persons, regardless of their voluntary or involuntary homeless status. Moreover, given the change in facts, there is no need for a continuing "obey the law" sort of order of injunction, as any viable

---

[1] Upon the City's motion, in October 2023, the Court modified Provision 1 of the Order to enjoin the City from "[e]nforcing the Camping and Sleeping Bans against involuntarily homeless persons for sleeping in public if there are no other public areas or appropriate shelters where those individuals can sleep." Doc. 119 at 3.

2

claims for seizure or destruction of property (which the City disputes) can be handled in the ordinary course of litigation. The Court should dissolve the Order.

# ARGUMENT

A party seeking dissolution of an injunction bears the burden of establishing: (1) that there has been a significant change in facts or law and (2) that the change warrants revision or dissolution of the injunction. *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (citing *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)). The latter inquiry "should be guided by the same criteria that govern the issuance of a preliminary injunction"—*i.e.*, a likelihood of success on the merits; a likelihood of irreparable harm; a favorable balance of equities; and consideration of the public interest. *Id.*

## I. The U.S. Supreme Court's Decision in *City of Grants Pass v. Johnson* is a Significant Change in Law that Warrants Dissolving the Injunction as to the Prohibition on Enforcement.

At the time the Court issued and later amended the Order, controlling Ninth Circuit precedent was that the Eighth Amendment prohibits the imposition of criminal and civil penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot reasonably obtain shelter. *See Martin v. City of Boise*, 920 F.3d 584, 616-617 (9th Cir. 2019); *Johnson v. City of Grants Pass*, 72 F.4th 868, 896 (9th Cir. 2023). But this is no longer the law. On June 28, 2024, the U.S. Supreme Court held that the enforcement of generally applicable laws regulating camping on public property does not constitute cruel and unusual punishment under the Eighth Amendment, concluding that homelessness policy should be vested in the American people's elected representatives, and overruling *Martin* and *Johnson*. *See City of Grants Pass v. Johnson*, No. 23-175, 144 S. Ct. 2202, 2220-23 (2024).

A Supreme Court decision that undoes the precedent upon which an injunction is based is a significant change in the law. Indeed, at the March 29, 2024 hearing on the Intervenor Defendants' motion to dismiss, Plaintiffs' counsel conceded that a change in Ninth Circuit precedent would "fundamentally change[]" the basis for Plaintiffs' Eighth

3

Amendment claims, if not make their claims "subject to dismissal." *See* Exhibit 1, 03/29/24 Tr. at 19:4-12. The Court put it more plainly, suggesting Plaintiffs' claims "might evaporate" with such a change in the law. *Id.* at 19:13. And as anticipated, in the wake of the Supreme Court's decision, Plaintiffs have abandoned their claim for relief under the Eighth Amendment's cruel and unusual punishment clause. *See* Doc. 159-1 at pp. 40-42.[2]

Stated simply, after the Supreme Court's decision in *Grants Pass*, Plaintiffs no longer have a viable Eighth Amendment claim, making success on the merits impossible as a matter of law. This change in the law thus warrants dissolving the Order as to Provision 1.

**II.   Significantly Changed Facts Warrant Dissolving the Injunction as to the Remaining Provisions of the Order Regarding Treatment, Storage, and Disposition of Personal Property.**

As to Provisions 2 and 3 of the Order, the facts have changed significantly since the December 2022 hearing. At that hearing, Plaintiffs stated they were concerned about treatment, storage, and disposition of unsheltered persons' personal property in two locations: first, within the area Plaintiffs call "the Zone," where Plaintiffs were concerned about personal property during enhanced cleanups; and second, throughout the rest of the City. *See* Exhibit 2, 12/14/22 Tr. at 25:2-10; 30:20-31:13.

Plaintiffs' first concern about disposition of property during enhanced cleanups is moot, because, as Plaintiffs have acknowledged (and as the Court may judicially notice), "the Zone" has been cleared. *See* Exhibit 1 at 16:24 (acknowledging that "the City has

---

[2] Plaintiffs now allege injury under the Eighth Amendment's excessive fines clause and seek monetary and injunctive relief for imposition of *any* fines on unsheltered individuals. *See* Doc. 159-1 at 42-44, 50-52. If the Supreme Court rejected the Ninth Circuit's expansion of Eighth Amendment protections in *Grants Pass*, the City has little doubt that Plaintiff's proposed expansion of Eighth Amendment protections against excessive fines would also fail judicial scrutiny, and the City intends to move to dismiss this count. In any event, as it stands, the Court's Order says nothing about excessive fines, and this novel legal theory is therefore not a basis to deny dissolution of the Order.

4

cleared out the Zone"); Katherine Davis-Young, *Phoenix Clears Last Remaining Block of "the Zone" Encampment*, KJZZ News (Nov. 1, 2023), https://www.kjzz.org/2023-11-01/content-1861760-phoenix-clears-last-remaining-block-zone-encampment. "The Zone" and associated enhanced cleanups are no longer. Thus, any argument or rationale for granting injunctive relief to protect personal property during enhanced cleanups disappeared along with the disappearance of "the Zone."

Plaintiffs' second concern about safeguarding personal property citywide is now remedied because the City has a citywide policy for how to handle and store personal property. Prior to the December 2022 hearing, the City submitted as evidence its "HSC [Human Services Campus] Enhanced Clean Up Abandoned Property Procedure," which detailed the procedures that the City had adopted for retrieval, storage, and disposition of abandoned property during enhanced clean ups of the area that the Plaintiffs call "the Zone." *See* Doc. 18-1, Attachment 1 (the "HSC Abandoned Property Procedure"). The HSC Abandoned Property Procedure applied only in the area around the Human Services Campus and did not apply citywide, nor was there a set amount of time that property had to be left before it was taken and disposed of. *See* Exhibit 2, 12/14/22 Tr. at 15:13-16, 60:8-14, 61:16-22. Although the Court gave little weight to Plaintiffs' arguments for the need for an injunction for property within "the Zone," the Court did express concern about the lack of a policy or evidence of a consistent policy or practice for other areas in the City. *See id.* at 30:22-31:11, 32:13-19, 63:2-8. The Court's subsequent Order made it clear that the lack of a policy explaining how property was determined to be "abandoned" and the lack of a policy that applied outside "the Zone" that provided clear notice of how long property would be stored or how it could be retrieved was of concern to the Court. *See* Doc. 34 at 10, 13-14.

The City took the Court's concerns to heart. The City has since adopted formal and explicit, citywide procedures to protect personal property that is reasonably presumed to belong to unsheltered persons, *wherever in the City it may be found*. The Court has

received evidence of the administrative procedures and guidance that the City promulgated titled "Identification and Storage of Property Belonging to Unsheltered Individuals" (the "Unattended Property Procedure") and the "Is It Garbage?" flowchart. *See* Doc. 80-1, Exhibits 1 and 2 to Declaration of Rachel Milne. These documents addressed the concerns that prompted the Court to enter the Order in the first place, and indeed, go beyond what is legally required to protect personal property. Specifically, the City has trained its staff to distinguish between unattended property and garbage. It has also formalized a policy of providing more than 24 hours' notice before storing property, leaving notice of how to retrieve property once it is removed, and providing individuals up to 45 days to retrieve property prior to disposal. *See id.*

Together, the elimination of "the Zone" and the promulgation of citywide policies to safeguard personal property comprise a significant change in facts that warrant dissolution of the remaining provisions of the injunction. At the December 2022 hearing, the Court stated that it did not believe that Plaintiffs had a likelihood of success on the merits for a Fourth or Fourteenth Amendment violation within "the Zone." Exhibit 2, at p. 30:22-31:6. That "the Zone" has been eliminated serves only to underscore that a continued injunction that covers "the Zone" is no longer warranted. Moreover, as the Court stated at the March 2024 hearing, the promulgation of a policy that "was citywide in terms of the seizure of property of those who were unhoused… does weigh in to whether nor not there is a likelihood of violation sufficiently established in the complaint as it stands now." *See* Exhibit 1 at 15:21-23, 17:4-13. The Court's inference was correct then and remains so: the fact that the downtown area has been cleared, and the City's subsequent adoption and demonstrated adherence to a citywide policy intended to safeguard property, cut seriously against Plaintiffs' likelihood of success on the merits, even if such a likelihood once existed.

If the Court's own words weren't enough, the City also notes the paucity of evidence that could justify continuing the injunction. At the December 2022 hearing, the

6

Court received evidence from a single Plaintiffs' witness, Ronnie Massingille, who testified that on December 13, 2022, he saw an alleged "sweep" in which unidentified white trucks were moving and dumping material left at 9th and Jackson Streets. *See* Exhibit 2, at 77:21-78:1. The City refuted this account with the testimony of Police Commander Brian Freudenthal, who testified that the police presence on that date and location was due to an active homicide investigation, and that the cleanup was a cleanup of burnt property from a series of fires that had taken place adjacent to one of the buildings. *Id.* at 83:21-84:22, 86:1-23. And notwithstanding Plaintiffs' counsel's representations that he "could pull out declarations from people… [who] will tell you… that their property is still being destroyed"—and notwithstanding the Court's gentle admonition suggesting that they file said declarations—they are yet to provide any such declaration or any other evidence to this Court. *See* Exhibit 1, at 18:4-7, 19:17-20. The fact that the parties have spent nearly two years in litigation without a shred of credible, documented evidence from Plaintiffs of unlawful seizure or disposition of property is, if not a change in facts, a compelling rationale for the Court to conclude that the injunction should not continue.

In short, Provisions 2 and 3 of the Order should be dissolved. Plaintiffs have not demonstrated a likelihood of success on the merits. As any potential claims that relate to these Provisions of the Order would be for alleged unlawful disposition of personal property, Plaintiffs' claims are remediable by damages. The balance of hardships must tip in the City's favor, because on this record, Plaintiffs have failed to demonstrate any likelihood of a recurring violation (to the extent they have credibly alleged a violation in the first place). Finally, public policy cuts against continuing the injunction, as the proper remedy for a Fourth Amendment, absent a clear pattern in the record of Fourth Amendment violation is a suit for damages, rather than injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. at 95, 113 (1983); *INS v. Delgado,* 466 U.S. 210, 218 n.6 (1984) ("An ambiguous, isolated incident such as [an attempted seizure] fails to provide

any basis on which to conclude that respondents have shown an INS policy entitling them to injunctive relief.").

## **CONCLUSION**

The Court can and should dissolve the Order (Doc. 34) in its entirety. The U.S. Supreme Court's recent decision that the enforcement of generally applicable laws regulating camping on public property does not constitute "cruel and unusual punishment" prohibited by the Eighth Amendment, overturning the precedent upon which the Order rested, warrants dissolving Provision 1 of the Order. Moreover, the dismantling of "the Zone" and the adoption of consistent, citywide policies (in addition to the lack of evidence of any actual violations) constitute significantly changed facts that warrant dissolution of Provisions 2 and 3 of the Order. A proposed form of order accompanies this Motion.

RESPECTFULLY SUBMITTED this 18th day of July 2024.

**PIERCE COLEMAN PLLC**

By /s/ Aaron D. Arnson
    Justin S. Pierce
    Aaron D. Arnson
    Trish Stuhan
    Stephen B. Coleman
    7730 E. Greenway Road, Suite 105
    Scottsdale, Arizona 85260
    *Attorneys for Defendants*

/   /   /

/   /   /

/   /   /

/   /   /

8

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2024, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing, causing a copy to be electronically transmitted to the following ECF registrants:

American Civil Liberties Union Foundation of Arizona
Jared G. Keenan
Christine K. Wee
jkeenan@acluaz.org
cwee@acluaz.org

Snell & Wilmer, LLP
Edward J. Hermes
Deliah R. Cassidy
ehermes@swlaw.com
dcassidy@swlaw.com

Zwillinger Wulkan PLC
Benjamin L. Rundall
Alexis J. Eisa
Lisa Bivens
ben.rundall@zwfirm.com
alexis.eisa@zwfirm.com
lisa.bivens@zwfirm.com

GOODWIN PROCTER LLP
Andrew Kim, admitted pro hac vice
Courtney L. Hayden, admitted pro hac vice
Collin M. Grier, admitted pro hac vice
Madeline Fuller, admitted pro hac vice
1900 N Street, N.W.
Washington, D.C. 20036
AndrewKim@goodwinlaw.com
CHayden@goodwinlaw.com
CGrier@goodwinlaw.com
MFuller@goodwinlaw.com

Attorneys for Plaintiffs

Tully Bailey LLP
Stephen W. Tully
Michael Bailey
Ilan Wurman
stully@tullybailey.com
mbailey@tullybailey.com
ilan.wurman@asu.edu
Attorneys for Intervenors

By: /s/ Mary Walker

10