**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA**
Jared G. Keenan, State Bar No. 027068
Christine K. Wee, State Bar No. 028535
2712 N. 7th Street
Phoenix, Arizona 85006
Telephone: (602) 650-1854
E-Mail: jkeenan@acluaz.org
        cwee@acluaz.org

**ZWILLINGER WULKAN PLC**
Benjamin L. Rundall, State Bar No. 031661
Alexis Eisa, State Bar No. 038702
Lisa Bivens, State Bar No. 034075
2020 North Central Avenue, Suite 675
Phoenix, Arizona 85004
Telephone: (602) 962-2969
E-Mail: ben.rundall@zwfirm.com
        alexis.eisa@zwfirm.com
        lisa.bivens@zwfirm.com

*Attorneys for Plaintiffs*

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Leah Watson, admitted *pro hac vice*
Scout Katovich, admitted *pro hac vice*
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
E-Mail: lwatson@aclu.org
        skatovich@aclu.org

**GOODWIN PROCTER LLP**
Andrew Kim, admitted *pro hac vice*
Courtney L. Hayden, admitted *pro hac vice*
Collin M. Grier, admitted *pro hac vice*
Madeline Fuller, admitted *pro hac vice*
1900 N Street, N.W.
Washington, D.C. 20036
Telephone: 202-346-4000
E-Mail: AndrewKim@goodwinlaw.com
        CHayden@goodwinlaw.com
        CGrier@goodwinlaw.com
        MFuller@goodwinlaw.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Fund for Empowerment, et al., | No. CV-22-02041-PHX-GMS |
| Plaintiffs, | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION ORDER** |
| vs. | |
| City of Phoenix, et al. | |
| Defendants. | |

The preliminary injunction currently in place against Defendants prevents the City from doing three things: (1) enforcing its Camping and Sleeping Bans against those who are involuntarily unhoused for sleeping in public if there is no other place to sleep; (2) seizing any property of the unsheltered without providing prior notice that the property will be seized, absent certain conditions relating to public health or safety; and (3) destroying seized property without maintaining it in a secure location for a period of less than 30 days, unless there is "an immediate threat to public health or safety" that warrants immediate destruction.  ECF No. 119, at 3.

In light of *City of Grants Pass v. Johnson*, 144 S. Ct. 2202 (2024), there may no longer be a basis for the first prohibition on enforcement of the Camping and Sleeping Bans. *Grants Pass*, however, had no impact on the other two prohibitions, which, taken together, require the City to provide notice before seizing the personal property of unhoused individuals and allow them a meaningful opportunity to retrieve any seized effects. The Fourth and Fourteenth Amendments, not the Eighth, provides the constitutional basis for those prohibitions.

Citing a purported citywide policy that has supposedly been in effect for more than a year, the City now says there has been a "significant change in facts" that justifies dissolving the injunction, as the change has "remedied" Plaintiffs' "concerns."  Def.'s Mot. to Dissolve Prelim. Inj. ("Motion" or "Mot."), ECF No. 167 at 5-6.  However, the City continues to seize the property of unhoused people without the requisite notice and opportunity to be heard required by the Constitution and this Court's preliminary injunction. For example, Plaintiffs Mohamad Sissoho, Dyrwood Moore, and Jason Rich personally experienced just how ineffective the City's new "policy" was in stopping the wanton seizure and destruction of property—the City seized and destroyed their property without notice or any opportunity to retrieve it well after the "policy" purportedly took effect.  Third Am. Compl., ECF No. 159, at ¶¶ 129-131, 137-147, 202-205.  The U.S. Department of Justice released a report documenting how, despite the City's purported about face, the City has continued to cavalierly destroy unhoused people's personal property in violation of the

Fourth and Fourteenth Amendments: "even after the injunction and new policies were in place … city officials destroyed people's belongings without notice or the opportunity to reclaim them."  U.S. Dep't of Justice, Civil Rights Division, *Investigation of the City of Phoenix and the Phoenix Police Department* 52 (2024) ("DOJ Report"), https://www.justice.gov/crt/media/1355866/dl?inline.

The City requests dissolution of the preliminary injunction due to its purported voluntary cessation of the unconstitutional seizure and destruction of property but it does not even bother to cite the relevant standard: because the supposed "change in conduct" is of the City's own making, the City has to show  "there is no reasonable expectation that the alleged violation will recur," and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *City of L.A. v. Davis*, 440 U.S. 625, 631 (1979).

The City cannot make either showing.  The Plaintiffs' well plead allegations, consistent with the findings in the DOJ report, establish that the City has continued the practices that warranted a preliminary injunction after the issuance of the "policy."  Unable to refute this, the City tries to revisit a settled record, implying that this Court was wrong to issue an injunction in the first place in light of the "paucity of evidence" establishing irreparable harm.  Mot. 6.  That is not a "change" in facts.  The only "change" to which the City points is an administrative procedure document filed more than a year ago, titled "Identification and Storage of Property Belonging to Sheltered Individuals," and a flowchart titled "Is It Garbage?".  ECF No. 80-1.  Despite the intervening year, the City has provided no evidence that the policy has some measure of permanence, as the voluntary cessation doctrine requires.  Moreover, the City has failed to provide any evidence that anyone is actually following the purported policy, or that compliance with the policy has cured the City's propensity for seizing and destroying the property of unhoused individuals without notice and an opportunity to reclaim.

The voluntary cessation doctrine exists to prevent exactly what the City is trying to do here:  say that things have changed to moot the need for relief, while keeping things the same.    The City has not altered its conduct "in a manner sufficient to present a fundamentally different controversy." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016).  To the contrary, the controversy is very much the same: the City of Phoenix and its officials are seizing and destroying the personal effects of unhoused individuals without notice and an opportunity to reclaim.

This Court should deny the City's request to dissolve the preliminary injunction to the extent that the City requests to be released from the second and third prohibitions in the injunction.

## ARGUMENT

I.    **THE CITY HAS FAILED TO PROVE THAT IT HAS PERMANENTLY STOPPED VIOLATING THE FOURTH AND FOURTEENTH AMENDMENTS BY SEIZING AND DESTROYING THE PERSONAL PROPERTY OF UNHOUSED INDIVIDUALS.**

The City relies on two factual developments to justify its request to dissolve the preliminary injunction's property provisions. First, it notes that the Zone has been closed. That observation is irrelevant:  the prohibition against the wanton seizure and destruction of the property of unhoused individuals is not just limited to the Zone.  ECF No. 119 at 3. The City contends that the Zone's closure "cut[s] seriously against Plaintiffs' likelihood of success on the merits," because it was the City's egregious conduct within the Zone that prompted the preliminary injunction.    Mot. 6.    However, neither the basis for the preliminary injunction, nor Plaintiffs' allegations that the City seized and destroyed their property were limited to the Zone. ECF No. 34 at 7-14; ECF No. 159, at ¶¶ 129-131, 137-147, 202-205.

Second, the City points to the fact that it has implemented a "citywide" administrative procedure, which it purportedly uses to "handle and store personal property." Mot. at 5.  It insists that the policy "formalize[s] a policy of providing more than 24 hours'

notice before storing property, leaving notice of how to retrieve property once it is removed, and providing individuals up to 45 days to retrieve property prior to disposal." *Id.*

But the City has failed to provide any evidence that anyone is actually complying with the policy, never mind complying to such a degree so as to "completely and irrevocably eradicate the effects of" its Fourth and Fourteenth Amendment violations. *Davis*, 440 U.S. at 631.[1] To the contrary, as explained below, the record demonstrates that the City persists in its utter failure to comply with the Constitution in its treatment of the personal property of unhoused individuals. The Ninth Circuit recently reaffirmed the propriety of a preliminary injunction requiring a city to respect the constitutional rights of unhoused people, notwithstanding the existence of a policy that, if followed, would comply with the constitution. *Coal. on Homelessness v. City & Cnty. of San Francisco*, No. 23-15087, 2024 WL 3325655, at *1 (9th Cir. July 8, 2024) (upholding a preliminary injunction requiring the City of San Francisco to follow its own bag and tag policy).

## II.   THE EVIDENCE PLAINLY SHOWS THAT AN INJUNCTION IS STILL NECESSARY, AS THE CITY'S SEIZURE AND DESTRUCTION OF PERSONAL PROPERTY IS STILL ONGOING.

Despite the preliminary injunction and purported "policy," the City continues to seize and destroy property of unhoused individuals without notice and an opportunity to be heard. In October 2023, City officials seized Mohamad Sissoho's personal belongings, including his clothes, a tent, and other effects that he needed to survive. He was never told how to retrieve those belongings. ECF No. 159, at ¶¶ 129-131. In September 2023 and March 2024, City officials took Dyrwood Moore's personal belongings, which included a tent, clothes, barbeque grill, bicycle, shoes, blankets, food, and water. *Id.* ¶¶ 137-144. City officials have rebuffed Mr. Moore's attempts to retrieve his items. *Id.* ¶¶ 146-147. In January 2024, City officials seized Jason Rich's personal belongings, including his

---

[1] The City has also not shown that this policy applies to all City officials. On its face, the policy applies only to "City of Phoenix Office of Homeless Solutions (OHS) staff" and not, for example, the Phoenix Police Department. Doc. No. 80-1 at 10.

1  medications, hygiene supplies, cellphone, identification, and backpack without any
2  information about where his items were taken.  *Id.* ¶¶ 202-205.

3      The Court need not only take Plaintiffs' word about how the City's "old ways" of
4  violating the Constitution have continued. *FBI v. Fikre*, 601 U.S. 234, 241 (2024).  The
5  Civil Rights Department of the U.S. Department of Justice reported that, even after this
6  Court's injunction, and even after "the City created policies to provide 24-hour notice
7  before cleanups, to distinguish between property and trash, and to store property," Phoenix
8  "officials destroyed people's belongings without notice or the opportunity to reclaim them."
9  DOJ Report at 52.  And all of this, DOJ reports, occurs "outside the Zone." *Id.* at 52.  Under
10  the guise of a program designed to help the unhoused, the City carries out a "program that
11  enables the unlawful seizure and destruction of property outside the Zone." *Id.*  City
12  officials have apparently responded to the "Is This Garbage?" flowchart by expressing
13  sentiments to unhoused individuals such as "You guys are trash, and this is trash," as they
14  seize and throw away the effects of the unhoused. *Id.* at 53.

15      Both the DOJ Report and the Plaintiffs' personal accounts confirm that the City
16  continues to engage in the conduct that the injunction is meant to prevent.  By the City's
17  own actions, the City has failed to "completely and irrevocably eradicate the effects of the
18  alleged violation." *Davis*, 440 U.S. at 631.  Instead, it has merely attempted to paper over
19  the violation.  The City tries to avoid the burden of this Court's injunction by insisting
20  Plaintiffs cannot establish that the City's violation of the Constitution persists and therefore
21  supports the injunction. But that is not the standard. "In all cases, it is the defendant's
22  'burden to establish' that it cannot reasonably be expected to resume *its* challenged
23  conduct—whether the suit happens to be new or long lingering, and whether the challenged
24  conduct might recur immediately or later at some more propitious moment." *Fikre*, 601
25  U.S. at 243.  "Nothing [the City] offers here satisfies that formidable standard." *Id.*

26
27
28

1

2

3

**III.    THE PROPERTY-RELATED PROVISIONS OF THE PRELIMINARY INJUNCTION SHOULD REMAIN INTACT, AS THE CITY HAS FAILED TO SATISFY THE VOLUNTARY CESSATION DOCTRINE.**

4

5

6

7

8

9

10

11

12

13

14

15

16

Even if the City was abiding by its "policy," which it is not, the "policy" does not satisfy the voluntary cessation doctrine. The "policy" exists entirely at the City's discretion—there is no measure of permanence to it, such that the City will not immediately abandon the policy the moment the injunction has been dissolved. *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013) (holding that a new policy did not present "the kind of permanent change that proves voluntary cessation"); *cf.* ECF No. 34 at 7 ("Further, because the problematic ordinances remain unamended, the City's position is 'a statement of administrative policy and so could be amended or reversed at any time by the [Phoenix] Chief of Police' or other officials") (citing *Martin v. City of Boise*, 920 F.3d 584, 607 (9th Cir. 2019). The policy "falls short of demonstrating that [the City] cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Fikre*, 601 U.S. at 242.  The City's policy can be "easily abandoned or altered in the future," which makes it inadequate to demonstrate voluntary cessation. *Bell*, 709 F.3d at 901.

17

18

19

20

21

22

23

24

25

26

27

A defendant cannot simply moot a claim by "suspending its challenged conduct after it is sued." *Fikre*, 601 U.S. at 241.  Otherwise, "a defendant might suspend its challenged conduct after being sued … and later pick up where it left off." *Id.*  The rule applies with equal force to preliminary injunctions too: "an action for an injunction does not become moot merely because the conduct complained of was terminated, if there is a possibility of recurrence, since otherwise the defendant's [sic] would be free to return to their old ways." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999); *Meyer v. Portfolio Recovery Assocs., LLC*, No. 11-cv-1008, 2011 WL 11712610, at *8 n.16 (S.D. Cal. Sept. 14, 2011) ("The Ninth Circuit has squarely rejected the proposition that any defendant can moot a preliminary injunction by simply representing to the court that it will cease its wrongdoing."); *see also Am. Freedom Defense Initiative*, 815 F.3d at 109 (applying the

28

1    voluntary cessation doctrine to a case where a defendant sought the dissolution of a
2    preliminary injunction on the basis that the challenged conduct has ceased).

3        It is not Plaintiffs' burden to establish that the *Winter* factors continue to support a
4    preliminary injunction:   it is the City's "formidable burden" to show that the City's
5    unconstitutional seizure and destruction of property "cannot reasonably be expected to
6    recur." *Fikre*, 601 U.S. at 241; *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,
7    20 (2008). In other words, "a defendant must prove *no reasonable expectation* remains that
8    it will return to its old ways." *Id.* (citation and internal quotation marks omitted).  "That
9    much holds for governmental defendants no less than for private ones." *Id.*  And to meet
10   this "formidable burden," *id.*, a defendant must establish that it has "completely and
11   irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631.[2]

12       As explained above, the City's attempt to dissolve this Court's injunction flunks on
13   both counts.  The City has failed to demonstrate that there is "no reasonable expectation …
14   that it will return to its old ways." *Fikre*, 601 U.S. at 241. And as the record shows, the City
15   is far from "completely and irrevocably eradicat[ing] the effects of" its unconstitutional
16   behavior.  *Davis*, 440 U.S. at 631.

17

18

19

---

20   [2] The City asserts that the "significant change in facts" standard should apply, but that
21   standard is relevant only where a party argues that an injunction should be dissolved
     because the facts have changed so much that the injunction is rendered irrelevant or
22   unnecessary.  Consider, for example, *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019),
23   the lone case in which the City relies for the "significant change in facts" rule.  There, the
     Trump Administration did not abandon its prohibition on military service by transgender
24   people—to the contrary, the "change in facts" doubled down on the alleged constitutional
     violation, but offered a more robust justification for the policy, which affected how the court
25   conducted its preliminary injunction analysis in that context.  *See id.*

26   The City's assertion here is markedly different:  it claims that it has reversed course and has
27   implemented a new policy designed to "remed[y]" the constitutional violation.  Mot. at 5.
28   When that is the basis for dissolving an injunction, the voluntary cessation doctrine applies.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CONCLUSION</u>**

Defendants' motion to dissolve the Court's preliminary injunction order should be denied with respect to the existing provisions prohibiting the seizure of property of unhoused individuals without providing prior notice and the destruction of seized property without maintaining it in a secure location for no less than 30 days.

DATED this 1st day of August, 2024.

By: /s/ *Jared G. Keenan*

Jared G. Keenan
Christine K. Wee
2712 N. 7th Street
Phoenix, Arizona 85006

AMERICAN CIVIL LIBERTIES
UNION OF ARIZONA

By: /s/ *Benjamin L. Rundall*

Benjamin L. Rundall
Alexis Eisa
Lisa Bivens
2020 North Central Ave., Suite 675
Phoenix, Arizona 85004-2556

ZWILLINGER WULKAN

By: /s/ *Leah Watson*

Leah Watson, *pro hac vice*
Scout Katovich, *pro hac vice*
125 Broad Street, 18th Floor
New York, New York 10004

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

By: /s/ *Andrew Kim*

Andrew Kim, *pro hac vice*
Collin M. Grier, *pro hac vice*
Madeline Fuller, *pro hac vice*
1900 N Street, N.W.
Washington, D.C. 20036

Courtney L. Hayden, *pro hac vice*
100 Northern Ave.
Boston, MA 02210

GOODWIN PROCTER LLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2024, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on all counsel of record via the Court's CM/ECF system.

By: /s/ *Andrew Kim*