# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fund for Empowerment, et al., | No. CV-22-02041-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss in Part Plaintiffs' Third Amended Complaint (Doc. 161) and Defendants' Motion to Dissolve the Preliminary Injunction Order (Doc. 160). For the reasons below, Defendants' Motion to Dismiss is granted, and Defendants' Motion to Dissolve the Preliminary Injunction Order is granted in part and denied in part.

## BACKGROUND

Plaintiff Fund for Empowerment ("FFE") is an incorporated nonprofit charity that provides advocacy, programming, and resources to unsheltered people in Maricopa County. (Doc. 159 at 7). Plaintiffs Ronnie Massingille, Mohamed Sissoho, Dyrwood Moore, Faith Kearns, Frank Urban, Timothy James, Sherdina Carr, Papy Abdul Idrissa, and Jason Rich are unsheltered people who reside in Maricopa County. (*Id.* at 7-8). Together, Plaintiffs have filed this action against the following Defendants: the City of Phoenix; the interim Chief of Police for the Phoenix Police Department, Michael Sullivan, in his official capacity; and the Director of the Office of Homeless Solutions, Rachel Milne,

in her official capacity. (*Id.* at 9).

For the past three years, the City of Phoenix ("City") has conducted raids of areas occupied by unsheltered people. (*Id.* at 13). During these raids, the City orders unsheltered people to pack up their belongings immediately in early morning hours. (*Id.*). Whenever people are unable to collect their belongings in the short time allotted, City police or other personnel allegedly remove and destroy those items. (*Id.* at 14). Plaintiffs are among the people who have lost items "such as personal IDs, photographs of family members and loved ones, and, in one case, even a set of teeth" because of these raids. (Doc. 159 at 14).

The City has issued criminal citations to unsheltered people for violations of Phoenix City Code § 23-30 ("Camping Ban"), Phoenix City Code § 23-48.01 ("Sleeping Ban"), in addition to Phoenix City Code § 23-85.01 and Arizona Revised Statutes § 13-1501 ("Trespassing Bans"). (*Id.*).

The Camping Ban provides: "It shall be unlawful for any person to camp in or on any public street or alley, sidewalk, rights-of-way, park or preserve, or other public ground that is owned, possessed, or controlled by the City."[1] Phoenix City Code § 23-30(A). According to the Code, "camp" means "to use real property in the City for living accommodation purposes such as sleeping activities, or making preparations to sleep, including the laying down of bedding for the purpose of sleeping, or storing personal belongings, or making any fire, or using any tents or shelter or other structure or vehicle for sleeping or doing any digging or earth breaking or carrying on cooking activities." Phoenix City Code § 23-30(C)(1); (Doc. 159 at 15).

The Sleeping Ban provides: "It shall be unlawful for any person to use a public street, highway, alley, lane, parkway, sidewalk or other right-of-way, whether such right-of-way has been dedicated to the public in fee or by easement, for lying, sleeping or otherwise remaining in a sitting position thereon, except in the case of a physical

---

[1] Plaintiffs' Third Amended Complaint states that the Camping Ban provides: "It shall be unlawful for any person to camp in any park or preserve, or in any building, facility, or parking lot or structure, or on any property adjacent thereto, that is owned, possessed and controlled by the City." (Doc. 159 at 15). This language reflects the Camping Ban prior to amendments in September 2024 and December 2024.

emergency or the administration of medical assistance." Phoenix City Code § 23-48.01; (Doc. 159 at 15).

The Trespassing Bans prohibit: (1) "Entering or remaining unlawfully on any real property after a reasonable request to leave by the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry"; (2) "Entering or remaining unlawfully in the right-of-way for tracks, or the storage or switching yards or rolling stock of a railroad company"; (3) "Entering or remaining unlawfully on any nonresidential structure or fenced commercial yard"; (4) "Entering or remaining unlawfully in a residential structure or fenced residential yard"; and (5) "Entering any residential yard, and without lawful authority, looking into the residential structure thereon with the intent to infringe on the inhabitant's right of privacy." Phoenix City Code § 23-85.01(B); *see also* A.R.S. § 13-1502(A)(1) (prohibiting "[k]nowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law enforcement officer, the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry); A.R.S. § 13-1503(A) (prohibiting "knowingly entering or remaining unlawfully in or on any nonresidential structure or in any fenced commercial yard"); A.R.S. § 13-1504(A)(1-2) (prohibiting "[e]ntering or remaining unlawfully in or on a residential structure" and "in a fenced residential yard"); (Doc. 159 at 16).

Any person who violates these laws is guilty of a misdemeanor, which is punishable by a fine up to $2,500 or imprisonment up to six months. Phoenix City Code § 1-5; (Doc. 159 at 17). The City also imposes a criminal fine "as a routine matter of course," and payment of that additional fine is required to resolve the criminal matter. (Doc. 159 at 17).

On December 16, 2022, this Court issued an Order that preliminarily enjoined the City from doing any of the following: (1) "Enforcing the Camping and Sleeping Bans against individuals who practically cannot obtain shelter as long as there are more unsheltered individuals in Phoenix than there are shelter beds available; (2) "Seizing any property of the unsheltered without providing prior notice at the property's location that the property will be seized, unless the agent or employee has an objectively reasonable

1  belief that it is (a) abandoned, (b) presents an immediate threat to public health or safety, or (c) is evidence of a crime or contraband;" and (3) "Absent an immediate threat to public health or safety, destroying said property without maintaining it in a secure location for a period of less than 30 days." (Doc. 34 at 19).

On July 12, 2024, Plaintiffs filed a Third Amended Complaint (Doc. 159), which is the operative complaint in this case. Plaintiffs allege the following constitutional claims: (1) unlawful seizure in violation of the Fourteenth Amendment; (2) deprivation of property without due process in violation of the Fourteenth Amendment; (3) excessive fines in violation of the Eighth Amendment; and (4) state-created danger in violation of the Fourteenth Amendment. (*Id.* at 29-40). On July 18, 2024, Defendants filed a Motion to Dissolve the Preliminary Injunction Order (Doc. 160). Defendants also filed a Motion to Dismiss in Part Plaintiffs' Third Amended Complaint (Doc. 161), requesting dismissal of Plaintiff's Eighth Amendment claim for excessive fines and Fourteenth Amendment claim for state-created danger, along with dismissal of Rachel Milne and Michael Sullivan as Defendants in this case.

## DISCUSSION

### I. Motion to Dismiss

#### a. Legal Standard

Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

In reviewing the complaint, the Court will "accept factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court will not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Additionally, the Court "cannot assume any facts necessary to [a plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). "Vague and conclusory allegations . . . are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### b. Eighth Amendment Claim for Excessive Fines

The Court first considers whether Plaintiffs allege a plausible claim for relief under the Excessive Fines Clause of the Eighth Amendment. The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609 (1993). The Ninth Circuit has "extended the protections of the Excessive Fines Clause to local penalties, fines, and fees." *Thomas v. Cnty. of Humboldt, Cal.*, 124 F.4th 1179, 1193 (9th Cir. 2024). "A fine may be unconstitutionally excessive if the dollar amount 'is grossly disproportionate to the gravity of the' offense." *People of City of L.A. Who are Un-Housed v. Garcetti*, No. CV 21-06003, 2023 WL 8166940, at *19 (C.D. Cal. Nov. 21, 2023) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998)).[2]

Plaintiffs fail to bring sufficient facts to state a plausible claim of excessive fines under the Eighth Amendment. Plaintiffs allege that a violation of the Camping Ban, Sleeping Ban, or Trespassing Ban is "punishable by a fine up to $2,500 per violation."

---

[2] "To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Thomas*, 124 F.4th at 1193 (quoting *Pimentel v. City of L.A.*, 974 F.3d 917, 922 (9th Cir. 2020)).

- 5 -

(Doc. 159 at 17). Plaintiffs also allege that the City imposes an additional criminal fine "as a routine matter of course." (*Id.* at 17). Plaintiffs allege, "The dollar amount enforcement of these penalties constitutes a violation of the Eighth Amendment's Excessive Fines clause, as incorporated by the Fourteenth Amendment." (*Id.* at 37). But as Defendants point out in their Response (Doc. 161 at 4), Plaintiffs do not allege the dollar amount of any fine actually imposed on a Plaintiff. (*See* Doc. 159 at 20-29). Instead, Plaintiffs allege, vaguely, that Plaintiff Faith Kearns and Plaintiff Frank Urban received "fines." (*Id.* at 21). Such allegations do not "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 545. To bring a plausible claim, Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Court cannot draw a reasonable inference that Defendants imposed a fine that "is grossly disproportional to the underlying offense," *see Bajakajian*, 524 U.S. at 336-37, without Plaintiffs alleging the dollar amount of a fine that was actually imposed on a Plaintiff. *See Langham v. City of Union City-City Hall*, No. 22-cv-06284, 2022 WL 22855060, at *1 (N.D. Cal. 2022) (recommending dismissal of an excessive fines claim where the plaintiff "provides no facts about being fined"); *c.f. Farina v. Metro. Transp. Auth.*, 409 F.Supp.3d 173, 201 (S.D.N.Y. 2019) (denying a motion to dismiss as to an excessive fines claim where the plaintiff alleges that she received "fines totaling $27,300" and paid an amount "of $1,305" to resolve the fines). The Court "cannot assume any facts necessary to [a plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1035. Accordingly, the Court grants Defendants' Motion to Dismiss (Doc. 161) as to Plaintiffs' excessive fines claim under the Eighth Amendment.

### c. Fourteenth Amendment Claim for State-Created Danger

The Court next considers whether Plaintiffs allege a plausible claim of state-created danger under the Fourteenth Amendment. As "a general rule, the Constitution does not guarantee any affirmative right to government aid or protection from third parties." *Wilson v. Tuba City Unified Sch. Dist.*, No. CV-20-08151, 2020 WL 7075384, at *4 (D. Ariz. Dec.

3, 2020). "In that vein, the Fourteenth Amendment's Due Process Clause generally does not confer an affirmative right to governmental aid." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) (citations omitted). The Ninth Circuit recognizes an exception to this rule—the state-created danger exception—which applies "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger." *Patel*, 648 F.3d at 971-72.

"First, to determine whether an actor affirmatively placed an individual in danger, courts examine whether the individual 'left the person in a situation that was more dangerous than the one in which they found [the person].'" *Wilson*, 2020 WL 7075384, at *5 (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). "[A] state actor cannot affirmatively place an individual in danger merely by failing to act, regardless of how reprehensible that failure may be." *J.K. v. Ariz. Bd. of Regents*, No. CV06-916, 2008 WL 4446712, at *5 (D. Ariz. Sept. 30, 2008).

"Second, deliberate indifference to a known or obvious danger requires a 'culpable mental state.'" *Wilson*, 2020 WL 7075384, at *5 (quoting *Patel*, 648 F.3d at 974). "The state actor must recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id.* (cleaned up).

Plaintiffs fail to bring sufficient facts to state a plausible claim of state-created danger under the Fourteenth Amendment. Plaintiffs allege, "Defendants know that removing unsheltered individuals from shaded areas and destroying items that provide them with protection from the sun, including tents and tarps, increase[s] those individuals' exposure to the sun and their risk of heat-related illness and death." (Doc. 159 at 39). Plaintiffs allege, "Defendants confiscate and destroy tents, tarps, and other shade-providing structures used by Plaintiffs, individuals served by FFE, and FFE members to protect themselves during the sun during extremely hot temperatures, despite knowing that depriving these individuals of shade-providing structures under these circumstances is dangerous to their health." (*Id.*). Plaintiffs allege that in November 2022 and in October 2023, the Phoenix Police Department seized Plaintiff Mohamed Sissoho's property,

1  including his tent and "other survival items," and "[w]ithout his tent, it has been hard for
2  [Plaintiff Mohamed Sissoho] to protect himself from the sun and sweltering heat." (*Id.* at
3  22-43). Plaintiffs allege that Phoenix Police Department forced Plaintiff Papy Abdul
4  Idrissa "to leave the shaded area and relocate to an unshaded area" on April 19, 2024 and
5  forced her to leave a "shaded bus top" and "move into areas unprotected from sun and heat
6  exposure" at another time in April 2024. (*Id.* at 28). Plaintiffs allege that in March 2024,
7  Phoenix Police Department seized Plaintiff Dyrwood Moore's "tent, shade for heat
8  protection, disability documentation, blankets, clothes, food, and water." (*Id.* at 24).
9  Plaintiffs further allege, "Without his tent and shade for heat protection, it has been difficult
10 for [Plaintiff Dyrwood Moore] to stay out of direct sun," and the "increased heat
11 experienced by [Plaintiff Dyrwood Moore] has at times caused him to feel faint and
12 exhausted." (*Id.*).

13 These facts as pled, construed in the light most favorable to Plaintiffs, do not state
14 a plausible claim of state-created danger under the Fourteenth Amendment. *C.f. Prado v.*
15 *City of Berkeley*, No. 23-cv-4537, 2024 WL 3697037, at *28 (N.D. Cal. Aug. 6, 2024)
16 (holding that the plaintiffs adequately alleged that the city exposed them to state-created
17 danger by depriving "them of survival gear such as tents, blankets, waterproof materials .
18 . . both in the pouring rain and in extreme heat"); *Sanchez v. City of Fresno*, 914 F.Supp.2d
19 1079, 1100 (E.D. Cal. 2012) (denying motion to dismiss as to state-created danger claim
20 where the city destroyed property "at the onset of the winter months that would bring cold
21 and freezing temperatures, rain, and other difficult physical conditions"). As to the
22 allegations regarding specific Plaintiffs' experiences, Plaintiffs allege that Defendants
23 removed shade-providing structures and relocated those Plaintiffs to unshaded areas only
24 in the months of March, April, October, and November. Through those allegations,
25 Plaintiffs do not plausibly allege that Defendants "recognize[d] an unreasonable risk and
26 actually intend[ed] to expose [Plaintiffs] to such risks without regard to the consequences."
27 *Wilson*, 2020 WL 7075384, at *5. The Court "cannot assume any facts necessary to [a
28 plaintiff's] . . . claim that they have not alleged." *Jack Russell Terrier Network of N. Cal.,*

407 F.3d at 1035. And Plaintiffs general allegations of Defendants' conduct towards "Plaintiffs, individuals served by FFE, and FFE members," (*see* Doc. 159 at 39), are insufficient because "[v]ague and conclusory allegations . . . are not sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d at 268. Plaintiffs thus do not provide "factual content that allows the court to draw the reasonable inference," *see Ashcroft*, 556 U.S. at 678, that Defendants "affirmatively [placed Plaintiffs] in danger by acting with deliberate indifference to a known or obvious danger," *see Patel*, 648 F.3d at 971-72. Accordingly, Plaintiffs' state-created danger claim fails, and the Court grants \Defendants' Motion to Dismiss (Doc. 161) as to that claim.

### d. All Claims Against Defendants Rachel Milne and Michael Sullivan

The Court next addressees whether to dismiss all claims against Defendants Rachel Milne ("Milne") and Michael Sullivan ("Sullivan"). Defendants argue, "Because the City is named as a [D]efendant, and because Defendants Milne and Sullivan are named only in their official capacities, the Court should dismiss them as redundant." (Doc. 161 at 7). Defendants cite *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department* to support this argument. (*Id.*). In *Center for Bio-Ethical Reform*, the Ninth Circuit held, "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." 533 F.3d 780, 799 (9th Cir. 2008).

In opposition, Plaintiffs argue that the Court should not dismiss Milne and Sullivan as Defendants because they are "key actors associated with the City's homelessness policies and implementation," they may become "necessary parties," and Defendants fail "to point to any prejudicial effect" by keeping Milne and Sullivan in the case. (Doc. 166 at 17). Plaintiffs, however, fail to cite any case that supports those propositions.

Plaintiffs bring the same four claims against Milne, Sullivan, and the City. "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Where, as here, all claims against the municipal officer are also against the local government entity, the claims against the

1 municipal officer in their official capacity are redundant. *See Borenstein v. Animal Found.*, 526 F.Supp.3d 820, 843 (D. Nev. Mar. 17, 2021) (dismissing all claims against a municipal officer because the plaintiff brought the same claims against the county). Plaintiffs do not provide any legal basis that instructs this Court against exercising its discretion and dismissing Milne and Sullivan as redundant defendants. Accordingly, the Court grants Defendants Motion to Dismiss (Doc. 161) as to all claims against Defendants Milne and Sullivan and dismisses Milne and Sullivan as redundant defendants.

### e. Prejudice

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "[l]leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice . . . or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "The Court's discretion to deny leave to amend a complaint is 'especially broad' where the plaintiff already has had one or more opportunities to amend his complaint." *Walker v. City of Phx.*, No. 11-01538, 2012 WL 3578888 at *1 (D. Ariz. Aug. 20, 2012) (quoting *id.* at 1161). "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.1989). The Court has already afforded Plaintiffs three opportunities to amend their complaint, and there is no basis for concluding that further amendment will cure the continuing deficiencies in their pleadings. Accordingly, the Court grants Defendants' Motion to Dismiss (Doc. 161) with prejudice.

## II. Motion to Dissolve Preliminary Injunction

### a. Legal Standard

"A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 116, 1169-70 (9th Cir. 2000). "If this showing has been made, the court must then address whether this change 'warrants . . . dissolution of the injunction.'" *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (citing *Sharp*, 233 F.3d at 1170). "This latter inquiry should be guided by the same criteria that govern

the issuance of a preliminary injunction."[3] *Id.* The burden with respect to that criteria still remains "on the parting seeking dissolution." *Id.* (citing *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013)).

### b. Analysis

On December 16, 2022, this Court issued an Order that preliminarily enjoined the City from doing any of the following: (1) "Enforcing the Camping and Sleeping Bans against individuals who practically cannot obtain shelter as long as there are more unsheltered individuals in Phoenix than there are shelter beds available; (2) "Seizing any property of the unsheltered without providing prior notice at the property's location that the property will be seized, unless the agent or employee has an objectively reasonable belief that it is (a) abandoned, (b) presents an immediate threat to public health or safety, or (c) is evidence of a crime or contraband;" and (3) "Absent an immediate threat to public health or safety, destroying said property without maintaining it in a secure location for a period of less than 30 days." (Doc. 34 at 19).

### i. Prohibition on Enforcing the Camping and Sleeping Bans

As to the injunction's first prohibition on enforcing the Camping and Sleeping Bans, Defendants have demonstrated that a significant change in law warrants dissolution. In their Motion, Defendants state, "At the time the Court issued and later amended the Order, controlling Ninth Circuit precedent was that the Eighth Amendment prohibits the imposition of criminal and civil penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot reasonably obtain shelter. . . But this is no longer the law. On June 28, 2024, the U.S. Supreme Court held that the enforcement of generally applicable laws regulating camping on public property does not constitute cruel and unusual punishment under the Eighth Amendment." (Doc. 160 at 3); *see City of Grants Pass v. Oregon*, 603 U.S. 520 (2024). In their Response, Plaintiffs concede, "In light of *City of Grants Pass v. Johnson*, there may no longer be a basis for the first prohibition on

---

[3] A plaintiff seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

- 11 -

enforcement of the Camping and Sleeping Bans." (Doc. 164 at 2). Accordingly, the Court grants Defendants' Motion to Dissolve Preliminary Injunction (Doc. 160) as to the prohibition on enforcing the Camping and Sleeping Bans.

### ii. Remaining Property-Related Provisions

As to the remaining property-related provisions in the injunction, Defendants have not demonstrated that a significant change in law or facts warrants dissolution. The burden lies with Defendants, not Plaintiffs, to demonstrate the need for dissolution of an injunction, *see Sharp*, 233 F.3d at 1169-70, and Defendants have failed to carry their burden here. Although Defendants demonstrate a change in facts through the implementation of a new policy, Defendants have not demonstrated that this change in facts is "significant." *See id.* As Plaintiffs point out, Defendants have not provided any evidence to show that all city officials, such as the Phoenix Police Department, are following the new policy. The only document that Defendants cite as evidence of a new policy in both their Motion and Reply is "Document 80-1." (Doc. 160 at 6; Doc. 165 at 9). Document 80-1 includes the following two documents: "Identification and storage of Property Belonging to Unsheltered Individuals" and "Is it Garbage?". (*See* Doc. 80-1 at 10-13, 15). Although Defendants argue that the new policy is "citywide," (Doc. 160 at 5), the "Identification and storage of Property Belonging to Unsheltered Individuals" document states that administrative procedure will be followed only by the "City of Phoenix Office of Homeless Solutions (OHS) staff." (Doc. 80-1 at 10). Moreover, the "Is it Garbage?" document involves a single-page page flowchart that instructs an unknown group how to determine whether an item is garbage. (*Id.* at 15). Neither of these documents indicate that the new policy applies to any member of the City besides OHS or that any member of the City—such as the Phoenix Police Department—is actually following the new policy in practice. Defendants thus fail to demonstrate that a "significant change in facts . . . warrants . . . dissolution of the injunction." *See Sharp*, 233 F.3d at 1169-70. Accordingly, the Court denies Defendants' Motion to Dissolve Preliminary Injunction (Doc. 160) as to the remaining property-related provisions. The injunction, therefore,

remains in effect as to those provisions.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss in Part Plaintiffs' Third Amended Complaint (Doc. 161) is granted as to the excessive fines claim under the Eighth Amendment and as to the state-created danger claim under the Fourteenth Amendment.

**IT IS FURTHER ORDERED** that the Court grants Defendants' Motion to Dismiss (Doc. 161) as to Defendants Rachel Milne and Michael Sullivan. Defendants Rachel Milne and Michael Sullivan are dismissed as redundantly pled.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dissolve the Preliminary Injunction Order (Doc. 160) is granted as to the first prohibition on enforcing the Camping and Sleeping Bans and denied as to the remaining property-related provisions.

Dated this 31st day of March, 2025.

_____
G. Murray Snow
Senior United States District Judge